**Suresh K. PURI, Appellant,**

v.

**Rustom MANSUKHANI, Appellee.**

**No. 14–96–01368–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 21, 1998.

702

Tom P. Allen, Judith A. Meyer, Houston, for appellant.

Michael D. Jones, Houston, for appellee.

Before YATES, AMIDEI and FOWLER, JJ.

## OPINION

AMIDEI, Justice.

This is an appeal from the denial of both a special appearance and a motion for new trial after a default judgment. Appellant, Suresh K. Puri, a native of Nigeria, is a shareholder officer, and director of a Texas corporation, Alpha Impex, Inc. (Alpha). In his suit for breach of his employment contract, appellee, Rustom Mansukhani, the corporation's president, obtained a default judgment against appellant. Appellant alleges in thirteen points of error that the trial court erred in denying his special appearance and his motion for new trial. We affirm.

### Background

Appellant and Harish Chulani (Chulani) established Alpha in 1990 to trade in synthetic resins in the international market. Appellant and Chulani were equal shareholders in Alpha. They recruited appellee to move to Houston from Nigeria to become Alpha's president, and Chulani instructed appellee to purchase a residence in Houston. Appellee originally received some shares of Alpha stock, but he was later required to return them. In February 1991, appellee and Alpha entered an employment contract, which was executed by Chulani as Chairman of the Board of Alpha. In the contract, Alpha

promised to pay appellee a salary of $90,000 per year for a ten-year period.

Appellant was also the Chairman of a Nigerian import company called Agro Allied Development Enterprises Limited (Agro Allied). Agro Allied acquired synthetic resins in the international market and sometimes traded with Alpha. Agro Allied also imported other products, including cocoa, lemon grass, equipment, and spare parts.

Initially, Alpha complied with the employment agreement. Appellee asserts that appellant took over as Chairman of Alpha in May 1993, and Alpha then underpaid appellee by approximately $85,000. Alpha ceased doing business in August 1994.

On August 31, 1994, Chulani caused Alpha to file this suit against appellee to require production of corporate records and for an accounting of corporate assets. Appellee counterclaimed, alleging the corporation breached his employment contract. He amended his claim to add appellant and Chulani as third party defendants, alleging negligent misrepresentation or fraud in the inducement of the employment contract. Appellee asked that the corporate entity be disregarded and that Chulani and appellant be held personally liable. Both appellant and Chulani were served with process in London in January 1996 and neither filed an answer. Appellee filed a motion for a default judgment, and a hearing was held on July 9, 1996. The trial court entered a default judgment on July 12, 1996, against both third party defendants and filed findings of fact and conclusions of law.

On August 12, 1996, appellant filed a special appearance. See TEX.R. CIV. P. 120a. The same day, subject to his special appearance, he also filed a motion for new trial. The trial court conducted a hearing on the special appearance on September 17, 1996. At the conclusion of the hearing, the court denied the special appearance. Appellant's counsel was not prepared to go forward on a hearing on appellant's motion for new trial after the special appearance hearing concluded. Appellant's counsel indicated appellant

wanted a hearing, but none had been requested and the motion had been scheduled for submission the previous day. No hearing was held. On October 7, 1996, the trial court entered an order denying the special appearance and later filed findings of fact and conclusions of law. The motion for new trial was overruled by operation of law.[1] Appellant timely requested findings of fact and conclusions of law on the denial of its motion for new trial, but none were filed. This appeal resulted.

### Waiver

■ Initially, we must resolve whether appellant waived his special appearance, as appellee contends. Appellant filed his motion for new trial subject to his special appearance. As one of the grounds for his motion, appellant stated he was ready to go to trial.

The Texas Supreme Court has held that a defendant waived its special appearance, even though the motion for new trial was made subject to the special appearance, because the motion stated the defendant was "ready to try this case when it is properly set for trial." See Liberty Enter., Inc. v. Moore Transp. Co., 690 S.W.2d 570, 571–72 (Tex. 1985). The defendant also agreed to the court's order reinstating the cause of action. The court found the defendant submitted to the court's jurisdiction by these affirmative acts, and therefore, its actions constituted a general appearance. Id.

Accordingly, we must determine whether appellant's motion for new trial constituted a general appearance. One court has explained:

A party enters a general appearance whenever it invokes the judgment of the court on any question other than the court's jurisdiction; if a defendant's act recognizes that an action is properly pending or seeks affirmative action from the court, that is a general appearance.

*Moore v. Elektro–Mobil Technik GmbH*, 874 S.W.2d 324, 327 (Tex.App.—El Paso 1994, writ denied) (cited with approval in *Dawson–*

---

1. Although the court made a docket entry that the new trial was also denied on October 7, there is no order in the record and the motion was overruled by operation of law on September 25, 1996.

*Austin v. Austin,* 968 S.W.2d 319, 322 (Tex. 1998)).

In this case, appellant did not make the same unqualified representation that he was ready to go to trial that was found in *Liberty Enterprises.* Instead, appellant wrote, *"[s]ubject to and without waiving his Special Appearance,* Puri is ready to go to trial and is willing to reimburse Mansukhani for all reasonable expenses incurred in obtaining the default judgment." (emphasis added).

The Texas Supreme Court recently held that a party who agreed her motion to quash service was moot after a defective special appearance was denied had not made a general appearance waiving her amended special appearance filed the next day. *Dawson–Austin,* at 324–27. The court also ruled that the motion to quash, a plea to the jurisdiction and plea in abatement, which were not specifically subject to the special appearance but were contained in the same instrument, did not constitute a general appearance. *Id.* at 321–23. In *Dawson–Austin,* the court appears to have retreated somewhat from the strict rule in *Liberty Enterprises* that resulted in waiver of a special appearance.

Many Texas courts generally recognize that if a non-resident defendant discovers a default judgment was entered, he should file a special appearance and then a motion for new trial *subject to his special appearance. See, e.g., Koch Graphics, Inc. v. Avantech, Inc.,* 803 S.W.2d 432, 433 (Tex.App.—Dallas 1991, no writ) (holding the defendant's special appearance was not waived where its motion for new trial and to have default judgment set aside were expressly made subject to its special appearance); *see also Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 652 (Tex.App.—Houston [14 th Dist.] 1992, no writ) (addressing the merits of defendant's special appearance and motion for new trial without finding waiver). Moreover, rule 120a provides that "any other plea, pleading, or motion may be contained in the same instrument or filed subsequent thereto without waiver of such special appearance." TEX.R. CIV. P. 120a(1).

Accordingly, we hold that appellant did not enter a general appearance and preserved his special appearance by making his motion for new trial strictly subject to his special appearance.

### Findings of Fact

■ When properly requested, the trial court has a mandatory duty to file findings of fact. *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989). If the trial court does not file findings after they have been timely and properly requested, it is presumed harmful unless the record affirmatively shows the appellant suffered no harm. *Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex. 1996).

Appellant asserts that findings on its motion for new trial were necessary and properly requested, but were not filed by the trial court. Appellant asks that we reverse the case because the error is not remediable in that the trial judge, Judge Carolyn Garcia, is no longer on the bench. *See FDIC v. Morris,* 782 S.W.2d 521, 523–24 (Tex.App.—Dallas 1989, no writ) (reversing for lack of findings because the trial judge was no longer on the bench).

■ First, appellant has not properly assigned error for our review. He alleges no point of error challenging the trial court's failure to make findings. Consequently, appellant has waived his complaint. *See Perry v. Brooks,* 808 S.W.2d 227, 229–30 (Tex. App.—Houston [14 th Dist.] 1991, no writ) (holding that error was waived where no point of error was alleged on lack of findings).

■ Furthermore, findings of fact are not mandatory after a motion for new trial. This is especially true when the motion is determined without a hearing. Findings of fact are appropriate after a motion for new trial hearing to receive evidence. *See, e.g., Higginbotham v. General Life & Acc. Ins. Co.,* 796 S.W.2d 695, 695 (Tex.1990) (reviewing findings from a hearing on a motion for new trial after a no-answer default judgment). They are not required, however.

■ Rule 296 provides that "[i]n any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact

and conclusions of law." TEX.R. CIV. P. 296. A case is "tried" when there is an evidentiary hearing before the court upon conflicting evidence. *See Besing v. Moffitt,* 882 S.W.2d 79, 81–82 (Tex.App.—Amarillo 1994, no writ). The purpose of Rule 296 is to give a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court. In other cases, findings and conclusions may be proper, but a party is not entitled to them. *IKB Indus., Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 442 (Tex.1997).

We hold that no error is presented concerning the lack of findings on the denial of appellant's motion for new trial.

## Special Appearance

■■■■■ Appellant's points of error one through twelve all attack the denial of his special appearance. On appeal, the scope of review of a ruling on a special appearance includes all evidence in the record. *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14 th Dist.] 1995, writ denied). In Texas, a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995).

■■■■■ The trial court's findings of fact are binding upon the appellate court unless challenged on appeal. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.App.—Beaumont 1980, writ ref'd n.r.e.). As the trier of fact, the trial judge may draw reasonable inferences from the evidence. We may not disregard her findings of fact on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). Al-

though a party may not challenge a trial court's conclusions of law for factual sufficiency, we may review the conclusions the trial court draws from the facts to determine their correctness. *See Zieba v. Martin,* 928 S.W.2d 782, 786 n. 3 (Tex.App.—Houston [14 th Dist.] 1996, no writ).

■■■■■ A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *See* U.S. CONST. amend. XIV, § 1; TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1986); *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas, as defined in that provision. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986).[2] In addition, the statute provides that "other acts" by the nonresident can satisfy the requirement. *Id.; Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The Texas Supreme Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal,* 815 S.W.2d at 226. Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Id.*

■■■■■ The United States Supreme Court divides the due process requirements into two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The minimum contacts analysis

---

**2.** Section 17.042 provides:

 In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

 (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

 (2) commits a tort in whole or in part in this state; or

 (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

has been refined into specific and general jurisdiction. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. 1868. General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state but there are continuous and systematic contacts between the nonresident defendant and the forum state. *Id.* at 414–16, 104 S.Ct 1868; *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state. *Schlobohm,* 784 S.W.2d at 357.

■ In point one, appellant contends the trial court erred in finding appellant engaged in systematic, regular, and purposeful contacts with the State of Texas. Similarly, in point two, appellant contends the trial court erred in finding appellant regularly, systematically, and continuously contacted and communicated with appellee in Texas by telephone and facsimile. In point of error three, appellant asserts the trial court erred in finding appellant became the Chairman of Alpha. In his fourth point of error, appellant alleges the trial court erred in finding appellant took a direct and active role in Alpha's management and regularly instructed appellee on business operations. In point seven, appellant contends the trial court erred in finding appellant recruited appellee to explore and conduct businesses in Texas that were unrelated to Alpha's business. Because these points all address the extent and quality of appellant's contacts with Texas through his involvement in Alpha's business, we will review the evidence related to these findings together.

In his affidavit, appellant stated that he was designated as a director of Alpha without his knowledge and consent and that he had no role in Alpha's operation, administration or daily business activities. He further stated the following:

I had no role in the negotiation of any contract or agreement for employment with Rustom Mansukhani. I made no representations of any kind to him regarding his employment with Alpha Impex, Inc. I have not signed any contract or entered any agreement with him.

I have never recruited any resident of the State of Texas for employment inside or outside the state. I have never made a contract or agreement with a resident of the State of Texas. I have never travelled [sic] to or been within the borders of the State of Texas. I have had a few telephone conversations from Nigeria to Texas to discuss shipments of plastics with Mr. Mansukhani. I have never made any other telephone calls to any place or person within the State of Texas.

Aside from the aforementioned conversations, my only involvement in or contact with the State of Texas has been to purchase shares in Alpha Impex, Inc. Any conversation I have had regarding this investment took place wholly outside the State of Texas. I do not own, or have any interest in, any real property or any other tangible or intangible assets in the State of Texas. I have never had any personal bank accounts in Texas.

In appellee's controverting affidavit, he stated that he first became acquainted with appellant in 1989 in Nigeria, and appellant initiated discussions about establishing an American company to acquire synthetic resins for export to Nigeria. He was hired as President of Alpha by Chulani and appellant, who requested him to move from Nigeria to Houston to develop a polypropylene export business. Appellee stated appellant replaced Chulani as Chairman of the Board of Directors of Alpha in May 1993 because Chulani's management had caused Alpha to incur losses. Appellant made many phone calls to appellee in Houston to transact business for Alpha. Appellee stated appellant requested information about the formalities necessary for Alpha's continued existence and appellee obtained and sent appellant a letter from an attorney addressing these matters. He stated he had over 300 pages of facsimile messages from and to appellee, and attached

copies of some of them. He stated he executed purchase orders for synthetic resins for appellant. Appellee stated appellant directed him to diversify Alpha's business.

In addition to his affidavit, appellee provided evidence of correspondence between appellant and appellee. A letter from appellant to appellee dated May 27, 1993, after appellee contends appellant took over the operation of the company, directs appellee to operate the company from his home, to install a fax machine there, and to forward him budget information on annual expenditures and sales targets, and other financial information. Other correspondence in January through May of 1994 concerns the expansion of business into polypropylene bags for shipping resin pellets. Another fax shows appellant's attempt to expand operations to do business with NNPC, Nigerian National Petroleum Company, and his request for catalogs and prices to provide to NNPC.

Appellant later submitted a supplemental affidavit, denying appellee's claims. Appellant stated that his contacts with appellee were on behalf of Agro Allied, the Nigerian company of which he was Chairman. He denied that his instructions were given to appellee in his capacity as an officer or director of Alpha. He also stated the facsimile messages to appellee were on behalf of Agro Allied. Many, but not all, of the exhibits representing correspondence from appellant are on Agro Allied letterhead and show appellant as the Chairman of Agro Allied. Some of these communications are from other individuals at Agro Allied. Some of the transmittals discuss transactions in resins, plastics, cocoa, lemon grass and other such products that appellee admitted Agro Allied was in the business of purchasing. While the fax transmittals from appellee to appellant do not constitute *appellant's* contacts with the forum, they indicate they are in response to contacts from appellant and tend to corroborate appellee's testimony about the frequent communications from appellant directing Alpha's business.

Appellee also testified at the special appearance hearing. He testified appellant took over from Chulani as Chairman of Alpha in May 1993, and he described a confer-

ence call where appellant said, "I will run this corporation from now henceforth." He testified appellant called him at least once a day, sometimes up to six times a day, and that they did business by phone or by exchanging faxes. Appellee testified appellant told him to close Alpha's downtown office and move the office to his home to save operating expenses. He also said appellant told him to continue the practice followed while Chulani was Chairman of underbilling the price of synthetic resins exported to Nigeria to save export taxes. He testified appellant directed or "recruited" him to expand the business in cocoa, spare parts for oil drilling rigs, sugar, rice, and the export of secondhand luxury cars. He testified that Alpha's original purpose was only to acquire synthetic resins for export to Nigeria. He testified appellant asked for financial information, including appellee's salary, for the past year and projections for the next three years from Alpha's CPA. Appellee testified appellant asked him to travel to Nigeria in May 1994 to meet with him.

On cross examination, appellee agreed that much of the correspondence admitted was from appellant in his capacity as chairman of Agro Allied. Appellee conceded appellant asked him to acquire products on behalf of Agro Allied. He also conceded the funds appellant furnished to Alpha were "partly" to pay Agro Allied's debts. In response to the court's question during the default judgment hearing about appellant's role in the corporate activities, appellee stated, "Mr. Chulani used to brief Mr. Puri on the activities." He also stated appellant owned 50% of the stock. He testified appellant never came to Texas, but his actions were through Chulani.

■ We conclude there is sufficient evidence to support the trial court's findings that appellant engaged in systematic, regular and purposeful contacts with the State of Texas, he regularly contacted appellee by phone and by fax, he was the Chairman of Alpha, he took an active role in Alpha's management and instructed appellee on its operations, and he directed him to expand Alpha's business beyond its original scope. While there is some evidence to support appellant's contentions that his actions were on behalf of

his Nigerian company, we cannot say the evidence is so overwhelming as to render the trial court's findings unjust. The evidence in this case primarily consists of opposing affidavits and appellee's testimony. Appellant relied only on his own affidavits at the special appearance hearing and produced no documentary or other evidence. Thus, the trial court, as the sole judge of credibility, could resolve the swearing match. We cannot comply with appellant's request that we re-evaluate appellee's credibility. We are not fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). We overrule points of error one through four and seven.

In his fifth point of error, appellant asserts the trial court erred in finding appellant instructed appellee to transfer money to him and that appellant deposited money in a Houston bank account. In his affidavit, appellee stated he transferred funds to appellant at appellant's request on more than one occasion. The corporate books for the first half of 1994 reflected accounts payable to appellant in the amounts of $40,000, $3,500, $3,000, and $1,000. Appellee testified at the hearing that appellant received funds from Alpha and benefitted from the fraudulent invoice scheme. He also testified appellant and Chulani had Alpha transfer money to their personal accounts. Appellee produced a copy of an "Owner's Consent to Pledge" executed by appellant to First Interstate Bank of Texas, where appellant pledged a $510,000 U.S. Treasury Bill so that Alpha could obtain credit. Appellee also submitted a copy of a letter from appellant, personally, to a First Interstate Bank vice-president discussing his recent purchase of the treasury bill which was to be used to "collateralize a line of credit to Alpha Impex, Inc." He wrote further that "[a]ny additional funds should be transferred to the account of Alpha Impex, Inc." Appellant acknowledged that he provided funds for a line of credit for Alpha, but he stated he did not know the funds were transferred to a Texas bank because Chulani handled the transaction. He denied receiving any funds from Alpha.

Although there is some conflicting evidence, we conclude there is sufficient evidence to uphold the trial court's finding and overrule point of error five.

In his sixth point of error, appellant asserts the trial court erred in finding appellee was a resident of Harris County, Texas, during all relevant times. Appellee testified he moved to Houston in 1989. The evidence in the record shows appellee resided in Texas when Alpha was formed, when the employment agreement was executed, when appellant became Chairman of Alpha, and when the employment contract was breached. Thus, even though appellee lived in Nigeria when he was recruited to come to Texas, he lived here during the events that form the basis of his counterclaim for breach of the employment contract. The trial court's finding is not against the great weight of the evidence. We overrule point of error six.

In point of error eight, appellant asserts the trial court erred in finding appellant instructed appellee to purchase automobile parts, medical supplies, and videotapes for appellant's personal use. Appellee testified at the special appearance hearing that appellant asked him to acquire medicine, videos, children's clothes, spare parts for cars, toys, cosmetics and other items for personal use, and to use Alpha's funds for the purchases. Appellant did not controvert this testimony. Accordingly, the trial court's finding is not against the great weight of the evidence. Point of error eight is overruled.

In point of error nine, appellant contends the trial court erred in finding appellant promised he would pay appellee's salary. Appellant has not directly controverted this finding. The only evidence to the contrary is that appellant stated in his affidavit that he did not sign a contract with appellee or make any representations regarding his employment.

In appellee's affidavit, he stated he repeatedly requested appellant to advance funds to pay his salary in 1993 and 1994. He testified appellant promised to transfer funds

to pay his salary, but he did not. Appellee testified that appellant asked him to maintain the same employment contract and that appellant repeatedly told him appellant, personally, as opposed to Alpha, would pay his salary according to the employment contract.

We hold the evidence is sufficient to support the trial court's finding that appellant promised to pay appellee's salary. We overrule point of error nine.

■ In point of error ten, appellant contends the trial court erred in finding appellant committed fraud in Texas. Appellee testified at the default judgment hearing that Chulani and appellant instructed him to lower the invoices charged to their companies in Nigeria to avoid taxes, and this practice caused Alpha to show losses. Appellee testified appellant benefitted from the fraudulent invoice scheme. Appellee testified appellant used Alpha as a conduit to benefit other corporations owned and controlled by appellant. He also testified appellant and Chulani lured him to the U.S. from Nigeria where he left a good job, and they induced him to enter an employment contract with false promises of ten years of employment which they never intended to honor.

The only contrary evidence in the record is comprised of appellant's sworn denials that he made any misrepresentations. Accordingly, we cannot say the trial court's finding is against the great weight of the evidence, and we overrule point of error ten.

In conclusion, although some of the trial court's fact findings were unnecessary to support the judgment, all of the findings are supported by the evidence and none are so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous. *See Chapman v. Home*, 561 S.W.2d 265, 268 (Tex.Civ.App.—Fort Worth 1978, no writ).

■ In point of error eleven, appellant contends the trial court erred in concluding appellant is subject to Texas jurisdiction under section 17.042 of the Texas Civil Practice and Remedies Code. As noted, we review conclusions of law de novo. *See Hydrocar-*

*bon Mgmt., Inc. v. Tracker Expl., Inc.*, 861 S.W.2d 427, 431 (Tex.App.—Amarillo, 1993, no writ).

■ First, the testimony that appellant promised to pay appellee's salary establishes that appellant agreed to perform a contract in Texas, a basis for jurisdiction under the Texas long-arm statute. *See* TEX. CIV. PRAC. &. REM.CODE ANN. § 17.042(1) (Vernon 1986). This evidence also constitutes a basis for personal jurisdiction over appellant through Texas's jurisdiction over Alpha. By appellant agreeing to become personally liable for Alpha's obligation to pay appellee's salary, Alpha's corporate veil has been pierced.[3]

■ Jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Vosko*, 909 S.W.2d at 99–100 (holding that jurisdiction over a Texas corporation did not create jurisdiction the nonresident defendant corporate officer because the corporation was not alleged or proved to be the defendant's alter ego); *Clark v. Noyes*, 871 S.W.2d 508, 518 (Tex.App.—Dallas 1994, no writ) (holding that even if Texas courts could assert jurisdiction over a foreign corporation, it was insufficient to assert jurisdiction over the nonresident defendant who was an officer, director, and shareholder of the corporation); *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 708 (Tex.App.—El Paso 1993, no writ) (holding that where the evidence was legally insufficient to support a finding of alter ego, the nonresident defendant, in his individual capacity, did not have any purposeful contacts with this state sufficient to confer personal jurisdiction over him); *see also Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (recognizing the exception to the general rule that an individual's contacts on behalf of a corporation do not create personal jurisdiction except when the court disregards the corporate fiction on the theory of alter ego). Alter ego is a basis in law for disregarding the corporate fiction when there is such unity between a corporation and an

---

3. Moreover, the trial court made a finding at the default judgment hearing that appellant is the alter ego of Alpha, and appellant has not directly assigned error to that finding on appeal.

individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986).

In 1989, the Texas legislature amended the Texas Business Corporation Act (TBCA) in response to *Castleberry* to provide the exclusive means for piercing the corporate veil to disregard the corporate fiction in contractual matters. *See* TEX. BUS. CORP. ACT art. 2.21(B) (Vernon Supp.1998). The TBCA provides that shareholders are not liable for the contractual obligations of the corporation unless actual fraud is shown. *Id.* art. 2.21(A)(2). In addition, shareholders are not liable under a corporate contract for failure to observe corporate formalities. *Id.* art. 2.21(A)(3). These limitations on liability do not apply, however, to a shareholder who has expressly assumed, guaranteed or agreed to be personally liable for the corporate obligations. *Id.* art. 2.21(B)(1). Therefore, the finding that appellant promised to pay appellee's salary means the corporate fiction may be disregarded and Texas acquired jurisdiction over appellant through its jurisdiction over Alpha.

Another basis for exercise of Texas longarm jurisdiction is the commission of a tort in the State of Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1986). We have previously determined there is sufficient evidence in the record to support the trial court's finding that appellant committed fraud in Texas.

 Appellee contends there are sufficient contacts with Texas to establish special and general jurisdiction over appellant according to Texas precedent. For example, in *Schlobohm v. Schapiro,* a defendant who loaned money to a Texas corporation in exchange for stock, became the corporation's sole director, conducted the corporation's first meeting in Dallas, and personally guaranteed leases for the corporation, had sufficient contacts to establish general jurisdiction. 784 S.W.2d at 356. The contacts in this case are similar, except that appellant has never been to Texas. A nonresident need not be physically present in the state if his activities have reasonably foreseeable

consequences in the forum. *See Siskind v. Villa Found. for Educ., Inc.,* 642 S.W.2d 434, 438 n. 5 (Tex.1982).

This case is also factually similar to *Thorpe v. Volkert,* 882 S.W.2d 592 (Tex.App.—Houston [1 st Dist.] 1994, no writ). Sufficient contacts with Texas existed to establish general jurisdiction where the nonresident defendant was an investor, stockholder, director, advisor, and negotiator for a Texas corporation. *Id.* at 596–97. He also visited Texas and maintained regular communications with Texas citizens. *Id.* Here, appellant was a shareholder, officer and director of a Texas corporation. He directed its business and regularly communicated with appellee, a Texas resident.

 Even a single contact with Texas can be sufficient for specific jurisdiction when the cause of action arises from that contact. *See Memorial Hosp.,* 835 S.W.2d at 650. Although the extent of the defendant's contacts with the forum state may be minimal, the quality and nature of those contacts may be substantial. *Id.* In determining whether there is a substantial connection between the nonresident defendant and the forum state, we should consider the foreseeability of injury to a Texas resident. *Id.* When the tortfeasor knows a resident of the forum will be injured by its actions, he must reasonably anticipate being haled into court there to answer for those actions. *Id.*

Here, evidence in the record shows appellant anticipated being haled into court to answer for breach of the employment contract and misrepresentations associated with that contract. Appellee testified appellant challenged appellee to sue him. Appellee stated that in 1994, appellant told him he would see appellee in court about Alpha's obligation to pay his salary. Appellee testified that after eight or nine months of nonpayment, he demanded payment and threatened legal action. He testified appellant responded, "Do what you have to do.... Sue me. My lawyers will take care of me." Moreover, evidence shows appellant participated in a fraudulent billing scheme which resulted in Alpha's inability to meet its obligations. There is also evidence that appel-

lant agreed to be liable for the corporation's salary obligations, thereby agreeing to perform a contract in Texas. Accordingly, the causes of action asserted by appellee arise out of appellant's contacts with Texas.

There is evidence that appellant purposefully availed himself of the benefits of doing business in Texas to benefit himself and his Nigerian corporations. A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See Burger King Corp.,* 471 U.S. at 475–76, 105 S.Ct. 2174.

We find the trial court correctly determined appellant is subject to jurisdiction under the Texas long-arm statute. Point of error eleven is overruled.

In point of error twelve, appellant contends the trial court erred in concluding that the notions of fair play and substantial justice are satisfied by the exercise of jurisdiction over appellant.

Under the Due Process Clause of the Fourteenth Amendment, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To invoke the fair play and substantial justice prong of due process, a nonresident defendant must present a compelling case that the exercise of jurisdiction would be unreasonable. *In re S.A.V.,* 837 S.W.2d 80, 85 (Tex.1992). The factors to be considered include: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; (5) the shared interest of the states in furthering fundamental substantive social policies. *Id.* at 86.

Appellee, as a resident of Texas since 1989, has a strong interest in litigating this suit here. In addition, Alpha was a Texas corporation, and Alpha instituted this suit in Texas. The employment contract was executed in Texas and involved services performed in Texas. Thus, Texas has an important interest in adjudicating suits such as this to protect its residents and enforce its contracts. There is evidence in the record that appellant is a very wealthy international businessman who presides over a company that does millions of dollars of business in various parts of the world. Appellant maintains residences in England, Nigeria and India. This evidence indicating it would not pose an unwarranted burden on appellant to litigate in Texas is offset by evidence of appellant's poor health and his physician's acknowledgment that appellant should not travel to Texas for trial. Nonetheless, we conclude the interests of both Texas and appellee outweigh appellant's health problems. Frequently the interests of the forum state and the plaintiff will justify the severe burden placed upon the nonresident defendant. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *See Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174; *see also Schlobohm,* 784 S.W.2d at 358 (noting "it has become less likely that the exercise of jurisdiction will fail a fair play analysis").

We hold the trial court's exercise of jurisdiction does not offend the notions of fair play and substantial justice. We overrule point of error twelve.

### Motion for New Trial

In point of error thirteen, appellant asserts the trial court erred in denying his motion for new trial. In reviewing a motion for new trial after a default judgment, we apply the following well established three-part test to determine if a new trial should have been granted: (1) the defendant's failure to answer before judgment was not intentional, or the result of conscious indifference on the defendant's part, but was due to a mistake or accident; (2) the motion for new

trial set up a meritorious defense; and (3) the motion was filed at a time when its granting would not result in a delay or otherwise injure the plaintiff. *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

■■■■ We review the trial court's ruling on a motion for new trial based on the abuse of discretion standard. *Director v. Evans,* 889 S.W.2d 266, 268 (Tex.1994) (denial of motion for new trial after default judgment). A trial court abuses its discretion if it denies a motion for new trial when the defendant satisfies the *Craddock* standard. *Old Republic Ins. Co. v. Scott,* 873 S.W.2d 381, 382 (Tex.1994).

In *Shamrock Roofing Supply, Inc. v. Mercantile National Bank,* 703 S.W.2d 356 (Tex. App.—Dallas 1985, no writ), the court addressed the movant's duty to present the motion for new trial for a hearing. In that case, after the entry of a default judgment, Shamrock filed a motion for new trial but did not request a hearing, and its motion for new trial was later overruled by operation of law. *Id.* at 357. In applying the *Craddock* standard, the appellate court stated that when a motion for new trial requires the exercise of discretion, the trial judge must have the opportunity to exercise that discretion before the court of appeals can hold that there is an abuse of discretion. *Id.* at 358. Consequently, the court held that no abuse of discretion occurs when the defaulting defendant fails to have a hearing on his motion and allows the motion to be overruled by operation of law. *Id.* at 357–58.

■■■■ Affidavits attached to the motion for new trial do not have to be offered into evidence to be considered by the trial court for any element of the *Craddock* test. *See Strackbein v. Prewitt,* 671 S.W.2d 37, 38–39 (Tex.1984). It is sufficient that the affidavits are attached to the motion for new trial and are part of the record. *Director,* 899 S.W.2d at 268. If a plaintiff contests the mistake/conscious indifference element, however, an evidentiary hearing with live witnesses is ordinarily required. *Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 392 (Tex.1993). In this case, appellant's conscious indifference or mistake was hotly contested. When

appellee demanded payment, appellee contends appellant invited suit and challenged appellee to "[s]ue me." Therefore, appellee challenged appellant's contention that he thought the lawsuit was a corporate matter and did not understand suit was filed against him personally. Appellee also disputed appellant's claims that he was unfamiliar with the Texas legal system and that he was too ill to manage his business.

■■■■ A motion for new trial to set aside a default judgment is a complaint on which evidence must be heard. TEX.R. CIV. P. 324(b)(1). Because appellant failed to request a hearing on the contested issue of conscious indifference and allowed the motion to be overruled by operation of law, we cannot say that an abuse of discretion has occurred. *See Fluty v. Simmons Co.,* 835 S.W.2d 664, 667–68 (Tex.App.—Dallas 1992, no writ). We hold that appellant cannot show the trial court abused its discretion under these disputed facts where appellant failed to have his motion set for hearing. We overrule point of error thirteen.

In conclusion, we affirm the judgment of the trial court.