TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00115-CV






Riad Elsolh Hamad, Appellant



v.



Austin Community College, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 99-06209, HONORABLE FRED A. MOORE, JUDGE PRESIDING 







 Riad Elsolh Hamad (1) appeals from the summary judgment rendered against him in
his suit for breach of contract against Austin Community College (ACC). We will affirm the
district-court judgment.

Factual and Procedural Background


 Hamad was employed as a part-time economics instructor for ACC. ACC
terminated Hamad as a result of student complaints. Hamad filed five lawsuits, all complaining
of his termination: two in federal court (Nos. A-99-CA-232-SS and A-99-CA-398-SS, United
States District Court, Western District of Texas, Austin Division) and three in state court (No.
99-06842, 200th District Court, Travis County, No. 99-06358, 345th District Court, Travis
County, and No. 99-06209, 98th District Court, Travis County). Cause number 99-06209, filed
May 28, 1999, is the suit that gives rise to this appeal. ACC was served in cause number 99-06209 on June 9, 1999, but failed to answer. On July 2, 1999, Hamad filed a motion for a default
judgment that was heard and signed by the district court on July 6, 1999. After learning of the
default judgment, ACC filed its original answer and motion for new trial, supported by the
affidavit of Geraldine Tucker, the ACC Associate Vice President upon whom service of process
was made. In her affidavit, she denied Hamad's allegations and set forth the supporting factual
basis for ACC's contentions that its failure to respond timely was due to inadvertence and mistake,
that ACC had meritorious defenses to Hamad's claims, and that Hamad would suffer no prejudice
or delay from the grant of a new trial. After a hearing on the motion for new trial on August 2,
1999, the district court granted ACC's motion for new trial, set aside the default judgment, and
reinstated the cause. (2)

 In the interim, Hamad dismissed with prejudice his other two state-district-court
lawsuits. On September 16, 1999, the United States District Court dismissed Hamad's two
federal-district-court suits as frivolous. (3) On November 15, 1999, ACC moved for summary
judgment in this cause based on res judicata and issue preclusion due to the dismissals of the state-
court litigation and the federal court's finding of frivolity. (4) The district court granted ACC's
motion for summary judgment.

 In six points of error, Hamad asserts that the district court erred in granting ACC's 
motion for new trial and in granting the summary judgment.


Discussion



Motion for New Trial


 The standard for granting a new trial after a default judgment is well established:


A default judgment should be set aside and a new trial ordered in any case in
which the failure of the defendant to answer before judgment was not intentional,
or the result of conscious indifference on his part, but was due to mistake or
accident; provided the motion sets up a meritorious defense and is filed at a time
when the granting thereof will occasion no delay or otherwise work an injury to
the plaintiff.



Craddock v. Sunshine Bus Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939). A trial court abuses
its discretion if it denies a motion for new trial when the defendant satisfies the Craddock
standard. See Old Republic Ins. Co. v. Scott, 873 S.W.2d 381, 382 (Tex. 1994); see also Puri
v. Mansukhani, 973 S.W.2d 701, 715 (Tex. App.--Houston [14th Dist.] 1998, no writ). Texas
courts have held consistently that "only a slight excuse is required" to satisfy the "mistake or
accident" prong of the Craddock test. See McClure v. Landis, 959 S.W.2d 679, 681 (Tex.
App.--Austin 1997, pet. denied); Europa Cruises Corp. v. AFEC Intern., 809 S.W.2d 783, 785
(Tex. App.--Houston [14th Dist.] 1991, no writ). A party moving for a new trial may support his
position by affidavits attached to the motion and by evidence. See McClure, 959 S.W.2d at 681. 
Unless the opposing party controverts specifically the facts alleged by the movant for new trial,
the latter will prevail on the issue of mistake. See Director, State Employees Workers'
Compensation Div. v. Evans, 889 S.W.2d 266, 269 (Tex. 1994); McClure, 959 S.W.2d at 681. 
 To satisfy the second prong of the Craddock test, proof of the defense is not
required; the motion should be granted if it "sets up" a meritorious defense. See Ivy v. Carrell,
407 S.W.2d 212, 214 (Tex. 1966); Europa Cruises, 809 S.W.2d at 786; Ritter v. Wiggins, 756
S.W.2d 861, 863 (Tex. App.--Austin 1988, no writ). The motion must allege facts which in law
would constitute a defense to the cause of action asserted by the plaintiff, and must be supported
by affidavits or other evidence proving prima facie that the defendant has such a meritorious
defense. See Ivy, 407 S.W.2d at 214; Europa Cruises, 809 S.W.2d at 786; Ritter, 756 S.W.2d
at 863.

 In his first two points of error, Hamad contends that ACC failed to satisfy the
"accident or mistake" prong of the Craddock test. (5) We disagree.

 In ACC's affidavit in support of the motion for new trial, Tucker stated that she
received a copy of No. 99-006358, the second state-court suit Hamad filed against ACC, from the
ACC president's office on June 7, 1999 and forwarded it to ACC's attorneys. The next day, she
received the petition in this cause, which arrived at her desk without citation and without
indication of the cause number or the court in which it had been filed, and which had the same
style as the lawsuit she had received and forwarded the day before. Based on these factors, she
concluded the document she received on June 8 was a copy of the suit that she had already
forwarded to ACC's attorneys and therefore she did not forward it to ACC's attorneys. 

 Hamad did not controvert any of these facts by affidavit. Nor did Hamad call any
witnesses at the hearing on the motion for new trial to present any controverting evidence. 
Accordingly, ACC conclusively established this prong of the Craddock test. See Evans, 889
S.W.2d at 269. We overrule points of error one and two.

 In points three and four, Hamad contends that ACC failed to satisfy the
"meritorious defense" prong of the Craddock test. In ACC's original answer and motion for new
trial, it denied Hamad's allegations and set forth the affirmative defenses of sovereign immunity,
lack of an enforceable contract, waiver, statute of frauds, failure of consideration and anticipatory
repudiation. The Tucker affidavit set forth facts in support of these defenses, including specific
facts supporting the defense of sovereign immunity. Hamad's arguments under these two points
misapprehend the nature of what ACC must show to secure a new trial. He argues that Alamo
Community College District v. Obayashi Corp., 980 S.W.2d 745 (Tex. App.--San Antonio 1998,
pet. denied), means that community colleges no longer have sovereign immunity available as a
defense. ACC disagrees with Hamad's interpretation. However, the determination whether ACC
would prevail on the merits of its sovereign-immunity defense is not the standard for reviewing
whether ACC met the test to receive a new trial. The trial court may not try the defensive issues
in deciding whether to set aside the default judgment. See Estate of Pollack v. McMurrey, 858
S.W.2d 388, 392 (Tex. 1993). Inasmuch as ACC has proffered a meritorious defense, we
conclude that it met the second prong of the Craddock test. Accordingly, we overrule points three
and four.


Summary Judgment


 Hamad challenges the district court's grant of summary judgment against him.
Summary judgment is properly granted only when a movant establishes there are no genuine
issues of material fact to be decided and that it is entitled to judgment as a matter of law. See
Tex. R. Civ. P. 166a(c); Memorial Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex.
App.--Austin 1998, pet. denied). In reviewing the grant of summary judgment, we view the
evidence in the light most favorable to the non-movant and make every reasonable inference and
resolve all doubts in favor of the non-movant. See Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985); Howard, 975 S.W.2d at 693.

 In his sixth point of error, Hamad complains that the district court erred in granting
summary judgment for ACC based on sovereign immunity. ACC did not seek summary judgment
based on sovereign immunity. Accordingly, we overrule point of error six.

 In his fifth point of error, Hamad complains that the district court erred in granting
summary judgment based on res judicata. To be entitled to summary judgment based on res
judicata, the movant must prove: (1) a prior final judgment on the merits by a court of competent
jurisdiction, (2) the identity of the parties, and (3) a second action based on the same claims as
were raised or could have been raised in the first action. See Bonniwell v. Beech Aircraft Corp.,
663 S.W.2d 816, 818 (Tex. 1984). The doctrine of res judicata bars relitigation of claims that
were brought or could have been brought in an earlier case involving the same parties (or those
in privity to them) and the same subject matter. See Barr v. Resolution Trust Corp., 837 S.W.2d
627, 631 (Tex. 1992); Chandler v. Chandler, 991 S.W.2d 367, 393 (Tex. App.--El Paso 1999,
pet. denied), cert. denied, 120 S. Ct. 1557 (2000). Res judicata, or claim preclusion, has its roots
in several policies: the need to bring all litigation to an end, prevent vexatious litigation, maintain
stability of court decisions, promote judicial economy, and prevent double recovery. See Barr,
837 S.W.2d at 629. In determining the claims barred by res judicata, Texas has adopted the
"transactional" approach. (6) A determination of what constitutes the subject matter of a suit
necessarily requires an examination of the factual basis of the claim or claims in the prior
litigation. It requires an analysis of the factual matters that make up the gist of the complaint,
without regard to the form of action. Barr, 837 S.W.2d at 630; Robinson v. Garcia, 5 S.W.3d
348, 351 (Tex. App.--Corpus Christi 1999, pet. denied). Any cause of action which arises out of
those same facts should, if practicable, be litigated in the same lawsuit. Barr, 837 S.W.2d at 630. 


 Under Texas law, it is well established that a dismissal with prejudice functions as
a final determination on the merits. See Mossler v. Shields, 818 S.W.2d 752, 754 (Tex. 1991); 
Li v. University of Tex. Health Science Center, 984 S.W.2d 647, 653 (Tex. App.--Houston [14th
Dist.] 1998, pet. denied); America's Favorite Chicken Co. v. Galvan, 897 S.W.2d 874, 877-78
(Tex. App.--San Antonio 1995, writ denied). Such a dismissal serves as res judicata. See Bill
Hart Auto Sales, Inc. v. Comerica Bank-Texas, 893 S.W.2d 705, 708 (Tex. App.--Eastland 1995,
no writ).

 ACC established the existence of a prior final judgment. The identity of parties
is not an issue. An examination of the subject matter of the suits underlying the final judgments
shows that they all contained the same nucleus of operative facts as the instant cause: Hamad's 
discharge from ACC and all the facts and circumstances surrounding that discharge. Whether his
particular form of action is labeled "breach of contract" or "failure to receive due process," they
could all have been joined in one suit. Application of res judicata in these circumstances
comports with the policy reasons behind the doctrine--instead of using judicial resources in five
different lawsuits filed in four different state and federal courts, the resources of one court could
have been occupied. The multiple suits allowed for real possibilities of multiple recovery or
conflicting judgments.

 ACC established all the necessary elements to show its entitlement to summary
judgment in this cause based on res judicata. Accordingly, we overrule point of error five.




Conclusion



 We conclude that the district court did not abuse its discretion in granting ACC's
motion for new trial following the default judgment against it and did not err in granting summary
judgment in ACC's favor. We have overruled Hamad's six points of error. Accordingly, we
affirm the district-court judgment.



 

 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: July 27, 2000

Do Not Publish
1. Hamad has represented himself pro se for most of this litigation. Nevertheless, he must
comply with applicable rules of procedure: "Neither is it [the right of self-representation] a
license not to comply with the relevant rules of procedural and substantive law." Faretta v.
California, 422 U.S. 806, 834 n.46 (1975). As stated by the Texas Supreme Court:


There cannot be two sets of procedural rules, one for litigants with counsel and the
other for litigants representing themselves. Litigants who represent themselves must
comply with the applicable procedural rules, or else they would be given an unfair
advantage over litigants represented by counsel.


Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184-85 (Tex. 1978); Chandler v. Chandler, 991
S.W.2d 367, 378-79 (Tex. App.--El Paso 1999, pet. denied), cert. denied, 120 S. Ct. 1557
(2000).
2. No reporter's record was made of the hearing on the motion for new trial. Hamad filed an
affidavit along with his response to the motion for new trial, but it pertained only to the damages
awarded by the default judgment. (He swore to the testimony on damages that he had given at
the hearing on the default judgment, which also was not reported.) 
3. See 28 U.S.C.A. § 1915(e)(2)(B) (West Supp. 2000).
4. Because Hamad filed as a pauper in state court, his suit is subject to dismissal as frivolous. 
See Tex. Civ. Prac. & Rem. Code Ann. § 13.001(a)(2) (West Supp. 2000).
5. Hamad does not contest the third prong of the Craddock test, that he would suffer no harm.
6. See Restatement (Second) of Judgments § 24.



ims in the prior
litigation. It requires an analysis of the factual matters that make up the gist of the complaint,
without regard to the form of action. Barr, 837 S.W.2d at 630; Robinson v. Garcia, 5 S.W.3d
348, 351 (Tex. App.--Corpus Christi 1999, pet. denied). Any cause of action which arises out of
those same facts should, if practicable, be litigated in the same lawsuit. Barr, 837 S.W.2d at 630. 


 Under Texas law, it is well established that a dismissal with prejudice functions as
a final determination on the merits. See Mossler v. Shields, 818 S.W.2d 752, 754 (Tex. 1991); 
Li v. University of Tex. Health Science Center, 984 S.W.2d 647, 653 (Tex. App.--Houston [14th
Dist.] 1998, pet. denied); America's Favorite Chicken Co. v. Galvan, 897 S.W.2d 874, 877-78
(Tex. App.--San Antonio 1995, writ denied). Such a dismissal serves as res judicata. See Bill
Hart Auto Sales, Inc. v. Comerica Bank-Texas, 893 S.W.2d 705, 708 (Tex. App.--Eastland 1995,
no writ).

 ACC established the existence of a prior final judgment. The identity of parties
is not an issue. An examination of the subject matter of the suits underlying the final judgments
shows that they all contained the same nucleus of operative facts as the instant cause: Hamad's 
discharge from ACC and all the facts and circumstances surrounding that discharge. Whether his
particular form of action is labeled "breach of contract" or "failure to receive due process," they
could all have been joined in one suit. Application of res judicata in these circumstances
comports with the policy reasons behind the doctrine--instead of using judicial resources in five
different lawsuits filed in four different state and federal courts, the resources of one court could
have been occupied. The multiple suits allowed for real possibilities of multiple recovery or
conflicting judgments.

 ACC established all the necessary elements to show its entitlement to summary
judgment in this cause based on res judicata. Accordingly, we overrule point of error five.




Conclusion



 We conclude that the district court did not abuse its discretion in granting ACC's
motion for new trial following the default judgment against it and did not err in granting summary
judgment in ACC's favor. We have overruled Hamad's six points of erro