Michael LANG, Individually, on Behalf of a Class of Shareholders, and Derivatively on Behalf of Capital Resource Investments, I and II, LLC, Capital Resource Advisors, LLC, and Capital Resource Financial, LLC, Appellant,

v.

CAPITAL RESOURCE INVESTMENTS, I and II, LLC, Capital Resource Advisors, LLC, and William Nicholson, Appellees.

No. 05–02–01406–CV.

Court of Appeals of Texas, Dallas.

April 22, 2003.

W.D. Masterson, John H. Crouch, Kilgore & Kilgore, Inc., Dallas, for Appellant.

Gerald Conley, Andrews & Kurth, Dallas, for Appellees.

Before Justices LANG, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice DAVID F. FARRIS (Retired).

In two issues, Michael Lang, individually, on behalf of a class of shareholders, and derivatively on behalf of Capital Resource Investments I, LLC (CRI), Capital Resource Investments II, LLC (CRII), Capital Resource Advisors, LLC (CRA), and Capital Resource Financial, LLC (CRF), contends that William Nicholson waived his special appearance and that the trial court erred in granting Nicholson's special appearance. We conclude that Nicholson did not waive his special appearance and that Nicholson's contacts with Texas were insufficient to subject him to personal jurisdiction in Texas. We affirm the trial court's dismissal of Lang's claims against Nicholson.

### FACTUAL AND PROCEDURAL BACKGROUND

Lang invested in CRI. CRA, previously named CRII, was a wholly owned subsid-

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

iary of CRI. CRF was a wholly owned subsidiary of CRA. CRI, CRA, and CRF will be collectively referred to as the "Companies." Nicholson was a director and an employee of CRI. Lang sued Nicholson, among other defendants, for breach of fiduciary duty, breach of the duty of care and loyalty, and negligence based on Nicholson's management of the Companies and took a default judgment in the amount of $5,000,000. Nicholson filed a special appearance and, subject to the special appearance, a motion for new trial.

On October 1, 2001, the trial court held a hearing at which it first considered whether the default judgment was final. Nicholson objected to the trial court considering any matter prior to ruling on Nicholson's special appearance. The trial court next considered Nicholson's motion for new trial. Nicholson objected to the trial court considering the motion for new trial prior to the special appearance and did not participate in the hearing. The trial court granted Nicholson a new trial and instructed Nicholson's counsel to participate in the preparation of a form order granting the new trial.

On November 5, 2001, the trial court granted Nicholson's special appearance. After doing so, the trial court raised an issue of law unrelated to the special appearance. Nicholson's trial counsel responded to the trial court's concerns. Lang argued Nicholson waived the special appearance by doing so. Nicholson's counsel stated Nicholson was seeking no affirmative relief from the trial court. The trial court indicated it had already granted the special appearance and had invited discussion on a potential problem in the judgment. After final judgment was entered, Lang appealed the trial court's grant of Nicholson's special appearance.

## WAIVER

■ Nicholson waived his special appearance if he sought affirmative relief or invoked the trial court's jurisdiction on any question other than the court's jurisdiction prior to the trial court ruling on the special appearance. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998). In his first issue, Lang argues that Nicholson waived his special appearance by (1) offering in the motion for new trial that, subject to the special appearance, Nicholson would participate in all needed hearings and would go to trial on the merits; (2) setting the motion for new trial for hearing and having the trial court rule on the motion for new trial prior to ruling on the special appearance; and (3) arguing the merits of the case after the special appearance was sustained.

■ As to the filing of the motion for new trial, Nicholson's offer in the motion to participate in all necessary hearings and to proceed to trial on the merits was made subject to his special appearance and did not waive the special appearance. *Puri v. Mansukhani*, 973 S.W.2d 701, 707 (Tex. App.-Houston [14th Dist.] 1998, no pet.) (special appearance not waived when offer in motion for new trial to proceed to trial made subject to special appearance). Further, the setting of the motion for new trial for hearing on the same day as the special appearance did not constitute a general appearance. *Silbaugh v. Ramirez*, No. 01–02–01129–CV, —— S.W.3d ——, ——, 2002 WL 31839227, at * 3 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.); *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 800 (Tex. App.-Houston [1st Dist.] 2000, no pet.).

■ Lang next relies on *Landry v. Daigrepont*, 35 S.W.3d 265 (Tex.App.-Corpus Christi 2000, no pet.), to support his argument that Nicholson waived the special appearance by having the trial court rule on the motion for new trial prior to

the special appearance. However, the defendant in *Landry* not only participated in the hearing on the motion for new trial, but specifically told the trial court that, although he knew the special appearance should be considered first, he was proceeding on the motion for new trial. *Id.* at 267–68. Nicholson did not participate. in the hearing on the motion for new trial and objected to the trial court's decision to proceed on the motion for new trial prior to ruling on the special appearance. Nicholson did not waive his special appearance when the trial court proceeded to rule on the motion for new trial over Nicholson's objection.

■ Lang also argues Nicholson waived his special appearance by approving the form of the order granting the motion for new trial. However, Nicholson was specifically directed to participate with Lang in the presentation of a form order to the trial court. Accordingly, Nicholson did not waive his special appearance by his counsel's approval of the form of the order. *See Antonio v. Marino*, 910 S.W.2d 624, 629 (Tex.App.-Houston [14th Dist.] 1995, no writ) (filing of stipulation requested by trial court that defendant would submit to jurisdiction in the Philippines did not constitute general appearance).

■ Lang finally contends Nicholson waived his special appearance by participating in substantive argument after the trial court granted the special appearance. Nicholson was responding to an issue raised by the trial court and stated he was seeking no affirmative relief. Nicholson did not waive the special appearance by responding to the trial court's inquiries. *Silbaugh*, —— S.W.3d at ——, 2002 WL 31829227, at *4 (defendant's counsel's statement of law that did not seek affirmative relief from court did not waive special appearance); *see Cleaver v. George Staton*

*Co.*, 908 S.W.2d 468, 470 (Tex.App.-Tyler 1995, writ denied).

We conclude Nicholson did not waive his special appearance. Lang's first issue is overruled.

### Special Appearance

In his second issue, Lang argues the trial court erred in granting Nicholson's special appearance because Nicholson had sufficient minimum contacts with Texas to subject him to the jurisdiction of a Texas court.

### A. Standard of Review

■ Whether a court has personal jurisdiction over a defendant is a question of law, which we review *de novo.* *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002), *cert. denied*, 536 U.S. 923, 122 S.Ct. 2589, 153 L.Ed.2d 778 (2002). When, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

### B. Applicable Law

■ A Texas court may exercise personal jurisdiction over a defendant only if the defendant has minimum contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Marchand*, 83 S.W.3d at 795. To establish minimum contacts, the defendant must have purposefully availed himself of the privilege of conducting activities within Texas, thus enjoying the benefits and protections of its laws. *Coleman*, 83 S.W.3d at 806. The defendant's activities must justify a conclusion that he reasonably anticipated being called into a Texas court.

*Id.* It is the quality and nature of the contacts, rather than their quantity, that is important to the minimum contacts analysis. *Id.*

█ A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Marchand,* 83 S.W.3d at 795. Lang contends Nicholson is subject to both specific and general jurisdiction because (1) at all relevant times, Nicholson was licensed as a securities broker in Texas; (2) the business plan for the Companies was developed in Texas; (3) the Companies were financed by the sale of securities to members who included two Texas residents; (4) Nicholson participated in the sale of securities to the two Texas residents; (5) Nicholson made phone calls to Texas about the Companies; and (6) Nicholson visited two of the Companies' clients in Texas.

### C.  Specific Jurisdiction

█ Specific jurisdiction exists when the nonresident defendant's purposeful contacts with the forum state arise from, or are directly related to, the cause of action. *Coleman,* 83 S.W.3d at 806. Lang's claims against Nicholson are based on Nicholson's conduct in managing the Companies and are not premised on the sale of securities to any Texas resident. Thus, the facts that interests in the Companies were sold to two Texas residents and that Nicholson was registered as a broker in Texas do not support specific jurisdiction in Texas.[3]

Lang also argues that his meeting with Nicholson in Texas to discuss the business plan for the Companies is a sufficient contact to support specific jurisdiction. However, Lang's claims are premised on Nicholson's actions while managing the Companies, not on the business plan or any statements made during the meeting in Texas. There is no evidence that any of Nicholson's alleged conduct occurred in Texas or is in any way related to Nicholson's contacts with Texas. *See Marchand,* 83 S.W.3d at 796–97 (concluding trial court lacked specific jurisdiction because nature of the claims demonstrate that they could only arise from defendant's conduct outside of Texas). The trial court did not err in concluding it did not have specific jurisdiction over Nicholson.

### D.  General Jurisdiction

█ General jurisdiction arises when a nonresident defendant engages in continuous and systematic contacts with the forum state. *Id.* at 796. The events which give rise to the cause of action need not occur in the forum state. *Id.; CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex. 1996). However, the defendant's activities within the forum state must be substantial, a more demanding minimum contacts analysis than for specific jurisdiction. *Marchand,* 83 S.W.3d at 797; *CSR Ltd.,* 925 S.W.2d at 595.

Nicholson lives and works in Illinois. He has never resided or maintained a residence in Texas, owned or leased property

---

**3.** Lang relies on Texas Revised Civil Statute article 581–16 to argue Nicholson's registration in Texas as a securities broker subjected Nicholson to jurisdiction in Texas. Article 581–16, which was repealed effective September 1, 2001, limited the broker's consent to jurisdiction to actions arising from a sale of securities. Act of June 15, 2001, 77th Leg., R.S., ch. 1091, § 2.24, 1977 Tex. Gen Laws 2399, 2419 (repealing article 581–16); Act of May 25, 1995, 74th Leg., R.S., ch. 228, § 10, 1974 Tex. Gen. Laws 1983, 1993 (nonresident dealer of securities consents to jurisdiction in Texas for any "actions growing out of any transaction" subject to The Securities Act). Lang did not plead any cause of action based on Nicholson's sale of a security.

in Texas, or maintained an office, mailing address, or telephone number in Texas. Nicholson has never, in his individual capacity, entered into a contract that was performable in whole or in part in Texas and has never advertised in Texas. Nicholson denied he solicited Texas residents to invest in the Companies.

■ Other than one meeting with Lang in Dallas, Texas to discuss the formation of the Companies, Nicholson's visits to Texas were in a professional capacity on behalf of an employer. Occasional travel to Texas by corporate personnel is insufficient to establish continuous and systematic contacts by the employee. *Haught v. Agric. Prod. Credit Ass'n,* 39 S.W.3d 252, 258 (Tex.App.-Tyler 2000, no pet.); *Hotel Partners v. Craig,* 993 S.W.2d 116, 121 (Tex.App.-Dallas 1994, pet. denied) ("When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas.").

As to Lang's meeting with Nicholson, Lang, who was not a resident of Texas at the time, requested the meeting be held in Texas. Nicholson cannot be haled into a Texas court based on Lang's unilateral choice of the meeting site. *Coleman,* 83 S.W.3d at 806, 809. Further, Lang's claims are not based on any statements made by Nicholson at the meeting or on the business plan that was discussed at the meeting. One conversation in Texas that does not form the basis of Lang's claims does not constitutes substantial activities within Texas to meet the more onerous burden of proving general jurisdiction. *See Marchand,* 83 S.W.3d at 797.

Nicholson recalled only a few telephone calls to the two Texas residents who invested in the Companies to discuss the sale of the Companies. These telephone calls were insufficient contacts to subject Nicholson to general jurisdiction. *Eakin v. Acosta,* 21 S.W.3d 405, 410 (Tex.App.-

San Antonio 2000, no pet.) ("Even when coupled with written correspondent and isolated trips to the forum state, long-distance telephone calls are generally not considered purposeful activities directed toward residents of the forum state."), *disapproved on other grounds, BMC Software Belgium N.V. v. Marchand,* 83 S.W.3d 789, 794 n. 1 (Tex.2002); *N803RA, Inc. v. Hammer,* 11 S.W.3d 363, 368 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (nonresident defendant's contact of Texas company, numerous phone calls to the company over period of year, and receiving commissions by checks drawn on Texas bank insufficient to support general jurisdiction). Further, Nicholson's registration as a broker in Texas was insufficient to establish general jurisdiction. *See Eakin,* 21 S.W.3d at 409 ("Thus, the mere fact that [defendant] is or was licensed in a Texas federal court does not establish the 'continuous and systematic contacts' needed to support general jurisdiction."). Nicholson did not have the substantial continuous and systematic contacts with Texas necessary to support general jurisdiction.

We conclude Nicholson did not have the minimum contacts with Texas necessary for the trial court to assert personal jurisdiction over Nicholson. We overrule Lang's second issue and affirm the trial court's granting of Nicholson's special appearance.