Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued March 2,
2006

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00707-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



VERIZON CALIFORNIA INC., Appellant

 

V.

 

DIANA DOUGLAS, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE FOR THE HEIRS AND ESTATE OF CAROLYN HARTON, Appellees

 

 



On Appeal from the 122nd District Court

Galveston County, Texas








Trial Court Cause No. 03CV0171

 

 

 



MEMORANDUM OPINION

 

          This
is an accelerated interlocutory appeal from the trial court’s denial of a
special appearance filed by appellant, Verizon California Inc. (“Verizon
California”).  We conclude that (1)
Verizon California did not generally appear in the case by violating the due
order of pleadings rule, and (2) viewing the facts in a light favorable to the
trial court’s ruling, the record does not satisfy the requirements of due
process and the Texas long-arm statute so as to confer personal jurisdiction on
the trial court.  We therefore reverse
and render judgment dismissing the claims against Verizon California for lack
of personal jurisdiction.

I.  BACKGROUND

 

          In
2003, Diana Douglas, individually and as the personal representative for the estate
of Carolyn Harton, sued Verizon Communications Inc., along with numerous other
defendants, alleging tort claims related to Harton’s asbestos exposure and
subsequent death.[1]  Harton’s husband worked for Verizon California
in California.  Douglas alleges that he
was exposed to asbestos during the course of his employment.  Douglas further alleges that Harton was also exposed
to the asbestos by doing her husband’s laundry and riding in his car.  Verizon Communications Inc. responded with a
special appearance, a motion to transfer venue, and an original answer.  The trial court did not immediately consider
Verizon Communications Inc.’s special appearance.

          Over
a year later, Douglas filed an eighth amended petition, which names both
“Verizon Communications, Inc.” and “Verizon Communications, Inc., d/b/a Verizon
California Inc., f/k/a GTE California, Inc.” as defendants.  Verizon Communications Inc. answered the
eighth amended petition on January 24, 2005, stating both that Douglas had
incorrectly inserted a comma in its corporate name, and had incorrectly sued it
as “Verizon Communications, Inc. d/b/a Verizon California, Inc. f/k/a GTE
California, Inc.”  Three months later,
the trial court granted Verizon Communications Inc.’s special appearance.

          On
April 25, 2005, the trial court signed a default judgment in the amount of $4.5
million against “Verizon California Inc., f/k/a GTE California, Inc.”  About one hour before the entry of the
default judgment, Douglas had filed a ninth amended petition, in which she
names “Verizon California, Inc., f/k/a GTE California, Inc.” as a defendant.  In that petition, Douglas asserts that she
“previously incorrectly sued” Verizon California, Inc., f/k/a GTE California,
Inc. as “Verizon Communications, Inc., d/b/a Verizon California Inc., f/k/a GTE
California, Inc.”

          Verizon
California filed a special appearance and brief in support on May 25,
2005.  Following the filing of its
special appearance, Verizon California also moved to vacate the default
judgment, or in the alternative to grant a new trial, or in the further
alternative to modify, correct, or reform the default judgment, all subject to
its special appearance (“motion for new trial”).  On July 5, 2005, the trial court heard
Verizon California’s special appearance, as well as its motion for new trial.  The court denied the special appearance but
granted the motion for new trial.  This
interlocutory appeal followed.[2]

II.  STANDARD OF
REVIEW

 

The plaintiff bears the initial
burden of pleading sufficient allegations to bring a nonresident defendant
within the provisions of the Texas long-arm statute.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002).  The
burden of proof then shifts to the nonresident to negate all possible grounds
for personal jurisdiction.  Kawasaki
Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).  The existence of personal jurisdiction is a
question of law, which must sometimes be preceded by the resolution of
underlying factual disputes.  Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism’d w.o.j.).  When
the underlying facts are undisputed or otherwise established, we review a trial
court’s denial of a special appearance de novo.  Id. 
Where, as here, a trial court does not issue findings of fact or
conclusions of law with its special appearance ruling, all fact findings
necessary to support the judgment and supported by the evidence are implied.  BMC Software, 83 S.W.3d at 79.

III.  ANALYSIS

 

A.      Waiver

 

          Initially, we determine whether
Verizon California waived its special appearance, as Douglas contends.  In doing so, we consider whether Verizon
California violated the due order of pleadings rule by making a general
appearance before obtaining a ruling on its special appearance.

          1.       Due
Order of Pleadings Rule

 

          Douglas
contends Verizon California violated the due order of pleadings rule, which
provides that a special appearance must be filed prior to “any other plea,
pleading or motion.”  Tex. R. Civ. P. 120a(1).  Here, after learning that a default judgment
had been taken against it, Verizon California properly filed a special
appearance and then a motion for new trial, subject to its special
appearance.[3]  See id. (“[A] special appearance shall
be made by sworn motion filed prior to motion to transfer venue or any other
plea, pleading or motion; provided however, that a motion to transfer venue and
any other plea, pleading, or motion may be contained in the same instrument or
filed subsequent thereto without waiver of such special appearance . . . .”); see
also Puri v. Mansukhani, 973 S.W.2d 701, 707 (Tex. App.—Houston [14th
Dist.] 1998, no pet.) (“Many Texas courts generally recognize that if a
non-resident defendant discovers a default judgment was entered, he should file
a special appearance and then a motion for new trial subject to his special
appearance.”).  Verizon California also
announced “not ready” at the hearing on the motion for new trial and insisted
that the trial court rule on the special appearance first.

          Douglas
nonetheless asserts that Verizon California violated the due order of pleadings
rule because it argued to the trial court at the special appearance hearing
that, if the trial court believed it had been properly sued, then the court
should also find that it had answered by way of Verizon Communications Inc.’s
answer.  Douglas maintains that since
Verizon Communications Inc.’s answer was filed on January 24, 2005, and Verizon
California’s special appearance was not filed until May 25, 2005, Verizon
California violated the due order of pleadings rule by raising this argument to
the trial court.

          We
disagree.  The Texas Rules of Civil
Procedure expressly permit a party to argue in the alternative.  Tex.
R. Civ. P. 48; Regency Advantage Ltd. P’ship v. Bingo Idea-Watauga,
Inc., 936 S.W.2d 275, 278 (Tex. 1996) (“[O]ur rules expressly permit
parties to proceed on alternative theories of relief.”).  At the special appearance hearing, in
response to questioning from the trial court, Verizon California primarily
argued that the default judgment was improper because Verizon California was
not a named defendant in the lawsuit by being listed as a “d/b/a” entity of
Verizon Communications Inc. in the eighth amended petition.  In the alternative, Verizon California argued
that if the trial court concluded it was properly added as a defendant in the
lawsuit brought against Verizon Communications Inc., then Verizon Communications
Inc.’s answer constituted an answer for Verizon California.  By arguing in the alternative that Verizon
Communications Inc.’s answer should be attributed to Verizon California,
Verizon California did not violate the due order of pleadings rule.  “A party may . . . state
as many separate . . . defenses as he has regardless of
consistency . . . .” 
Tex. R. Civ. P. 48
(emphasis added).  We therefore reject
Douglas’s contention that Verizon California waived its special appearance by violating
the due order of pleadings rule.

          2.       General
Appearance

 

          Douglas
further contends Verizon California waived its special appearance by asking, in
its motion for new trial, that the trial court modify the default judgment
interest rate and consider its entitlement to a settlement credit.  Douglas urges that by doing so, Verizon
California sought affirmative relief from the trial court and therefore made a
general appearance.

          A
party waives its special appearance if it seeks “affirmative relief or invoke[s]
the trial court’s jurisdiction on any question other than the court’s
jurisdiction prior to the trial court ruling on the special appearance.”  Lang v. Capital Res. Invs., I & II,
LLC, 102 S.W.3d 861, 864 (Tex. App.—Dallas 2003, no pet.) (citing Dawson-Austin
v. Austin, 968 S.W.2d 319, 322 (Tex. 1998)).  Here, although Verizon California’s motion
for new trial seeks affirmative relief from the trial court, Verizon California
did not seek such relief prior to the trial court ruling on the special
appearance.  To the contrary, Verizon
California not only made its motion for new trial subject to the special
appearance, it also expressly announced “not ready” at the hearing on the
motion for new trial until the court ruled on the special appearance.[4]  By announcing “not ready” at the hearing on
the motion for new trial, Verizon California clearly indicated it was not
seeking affirmative relief or invoking the trial court’s jurisdiction with
respect to the motion for new trial until the trial court had ruled on the
special appearance.  Accordingly, we hold
that Verizon California did not make a general appearance, thereby waiving its
special appearance.  See Dawson-Austin,
968 S.W.2d at 322–23 (holding that motion to quash service, plea to
jurisdiction, and plea in abatement, all contained in same instrument as
special appearance but not expressly made subject to special appearance, did
not constitute general appearance); Lang, 102 S.W.3d at 864–65 (in default
judgment case, holding that appellant’s offer in motion for new trial to
participate in all necessary hearings and proceed to trial on merits did not
constitute general appearance because motion for new trial was made subject to
special appearance, and further holding that where appellant set motion for new
trial and special appearance for hearing on same day, appellant did not make
general appearance because he objected to trial court’s decision to proceed on
motion for new trial before ruling on special appearance); Minucci v.
Sogevalor, S.A., 14 S.W.3d 790, 800 (Tex. App.—Houston [1st Dist.] 2000, no
pet.) (“[Appellant] did not waive his special appearance by simply filing a
notice of oral hearing on the motion to dissolve writ of garnishment.”); Puri,
973 S.W.2d at 706–07 (in default judgment case, holding that appellant did not
make general appearance, even though his motion for new trial expressly stated
he was “ready to go to trial,” because motion for new trial was expressly made
subject to special appearance).

B.      Special Appearance

 

          Verizon
California contends the trial court erred in determining that it is subject to
the personal jurisdiction of a Texas state court.  Specifically, Verizon California asserts that
no evidence demonstrates it has minimum contacts with Texas sufficient to
warrant the exercise of jurisdiction, and further asserts that general jurisdiction
does not comport with traditional notions of fair play and substantial justice.

          A Texas
court may assert personal jurisdiction over a nonresident defendant only if the
requirements of both the Fourteenth Amendment’s due process clause and the
Texas long-arm statute are satisfied.  See
U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code Ann. §
17.042 (Vernon 1997); CSR
Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  The Texas long-arm statute allows a court to
exercise personal jurisdiction over a nonresident defendant who does business
in Texas.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042.  The Texas Supreme Court has repeatedly
interpreted this broad statutory language “to reach as far as the federal
constitutional requirements of due process will allow.”  CSR Ltd., 925 S.W.2d at 594
(citations omitted).  Therefore, the
requirements of the Texas long-arm statute are satisfied if the exercise of
personal jurisdiction comports with federal due process limitations.  Id.

          The
United States Constitution permits a state to assert personal jurisdiction over
a nonresident defendant only if the defendant has some minimum, purposeful
contacts with the state and if the exercise of jurisdiction will not offend
traditional notions of fair play and substantial justice.  Burger King Corp. v. Rudzewicz, 471
U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985); Dawson-Austin, 968
S.W.2d at 326.  A nonresident that has
purposefully availed itself of the privileges and benefits of conducting
business in the state has sufficient contacts with the state to confer personal
jurisdiction.  CSR Ltd., 925
S.W.2d at 594.  

          The
“purposeful availment” requirement has recently been characterized by the Texas
Supreme Court as the “touchstone of jurisdictional due process.”  Michiana Easy Livin’ Country, Inc. v. Holten,
168 S.W.3d 777, 784 (Tex. 2005).  In Michiana,
the Texas Supreme Court articulated three important aspects of the purposeful
availment inquiry.  Id. at
785.  First, only the defendant’s
contacts with the forum count.  Id.  This ensures that a defendant is not haled
into a jurisdiction solely by the unilateral activities of a third party.  Id. (citing Burger King, 471
U.S. at 475, 105 S. Ct. at 2183). 
Second, the acts relied on must be purposeful; a defendant may not be
haled into a jurisdiction solely based on contacts that are “random, isolated,
or fortuitous.”  Id. (citing
Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478
(1984)).  Third, a defendant
“must seek some benefit, advantage, or profit by ‘availing’ itself of the
jurisdiction” because “[j]urisdiction is premised on
notions of implied consent—that by invoking the benefits and protections of a
forum’s laws, a nonresident consents to suit there.”  Id. (citing
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559,
567 (1980)).

          A
defendant’s contacts with a forum can give rise to either general or specific
jurisdiction.  Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex.
1991).  Douglas concedes that this case
is one of general jurisdiction.[5]  General jurisdiction arises when a
defendant’s “general business contacts” with the forum state are “continuous
and systematic,” allowing the forum to exercise personal jurisdiction over the
defendant even though the cause of action does not arise from or relate to
activities conducted within the forum.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868,
1873 (1984); CSR Ltd., 925 S.W.2d at 595.  When general jurisdiction is asserted, the
minimum contacts analysis is more demanding and requires a showing that the
defendant conducted “substantial activities” in the forum state.  CSR Ltd., 925 S.W.2d at 595.

          1.       Minimum Contacts

          The
uncontroverted evidence before the trial court shows that Verizon California is
incorporated and authorized to do business in California.  Its principal place of business is in
California—it is not qualified to do business in Texas.  It does not have a bank account in
Texas.  Nor does it own or lease any real
property in Texas.

          Douglas
nonetheless contends the trial court properly determined that Verizon
California is subject to the general jurisdiction of a Texas court for the
following reasons: (1) Verizon California does business in Texas from a
permanent office location; (2) at least one of Verizon California’s corporate
officers works from that Texas location; (3) Verizon California pays its
California property taxes from the same Texas location; and (4) the tariff that
allows Verizon California to collect End User Common Line charges from its
customers was drafted and issued from a Texas address.[6]  We address each in turn.

                   a.       Permanent Office Location

          Verizon
California is a wholly-owned subsidiary of GTE Corporation.  Douglas provided the trial court with print
copies of internet webpages stating that GTE moved its corporate headquarters
to Irving, Texas in 1998.  Douglas also
furnished the trial court with an internet copy of the Dallas Central Appraisal
District’s record for GTE Realty Corp.’s property located at 600 Hidden Ridge
Drive in Irving, Texas.  Douglas asserts
that even though the property is “technically owned” in GTE’s name, it is used,
at least in part, by Verizon California.

          Douglas
does not dispute that Verizon California and GTE are distinct corporate
entities.  If a party seeks to ascribe
one corporation’s activities to another corporation by disregarding their
distinct corporate entities, that party must prove that the corporate fiction
should be disregarded.  BMC Software,
83 S.W.3d at 798.  More specifically, “[t]o
‘fuse’ the parent company and its subsidiary for jurisdictional purposes, the
plaintiffs must prove the parent controls the internal business operations and
affairs of the subsidiary.”  Id.
at 799.  Here, Douglas did not provide
the trial court with any evidence indicating GTE controls the internal business
operations and affairs of Verizon California; nor did she provide any evidence
to substantiate her assertion that Verizon California conducts business from
GTE’s Texas facility.  Accordingly, we
cannot base general jurisdiction on Douglas’s assumption that Verizon
California operates from a permanent office location in Texas.

                   b.       Location of Corporate Officer

In support of its special appearance,
Verizon California provided the affidavit of its Assistant Secretary, Rosalynn
Christian.  Christian signed the affidavit and had it notarized in Dallas
County, Texas.  On the morning of the special appearance hearing, Verizon
California furnished the trial court with another affidavit from Christian,
which she also signed and notarized in Dallas County.  Douglas asserts that because both affidavits
were signed and notarized in Texas, this is some evidence Verizon California
was doing business in Texas.  We disagree.  The fact that Christian
signed and notarized the affidavits in Texas proves that she was physically
present in Texas at that time, but it does not prove that Christian is a
resident of Texas or that she conducts business in Texas on behalf of Verizon
California.  Douglas’s counsel conceded as much at the special appearance
hearing: “[Y]ou will see that [the affidavit is] signed in the State of Texas,
County of Dallas, by Rosalynn [Christian] today, this morning. . . .  Now that doesn’t prove anything except she was
in Dallas this morning . . . .”[7]

Douglas also points out that her
counsel testified at the special appearance hearing, over a hearsay objection,
that he attempted to reach Christian on the morning of the hearing by calling
the telephone number for Verizon Communications Inc. listed on its website.
 The operator provided a 972 phone number for Christian.  Douglas contends this is some evidence that
Verizon California has a telephone number in Texas.  Again, however, this
testimony merely shows that Christian could be reached at a Dallas-area
telephone number.[8]
 This is insufficient to show Christian conducts business from a Texas
location on behalf of Verizon California on a continuous and systematic basis.

                   c.       Property Tax Payments

          Douglas
provided the trial court with a document from the California Board of
Equalization, which is responsible for collecting property taxes from
California companies.  The document lists
Verizon California as an assessee and gives the following mailing address:
“Care Of: Verizon Corporate Svcs Group Inc., PO Box 152206, Irving, Texas
75015-2206.”  Douglas asserts that
because Christian works for Verizon Corporate Services Group, this document
provides some evidence that Christian conducts business on behalf of Verizon
California—namely, paying its California property taxes—from her location in
Texas.

The only evidence concerning
Christian’s job duties for Verizon Corporate Services Group indicates that she
is a “Specialist-Legal Support,” which means she “oversee[s] the corporate
governance for certain subsidiaries of Verizon Communications Inc.”  We cannot infer from this evidence that Verizon
California conducts business in Texas. 
To the contrary, Douglas’s evidence shows that Verizon Corporate
Services Group, a separate corporate entity, receives Verizon California’s
California property tax assessment notices at a Texas address.  This is insufficient to show Verizon
California has continuous and systematic contacts with Texas.

 

                   d.       FCC Tariff

          In
1983, the Federal Communications Commission (“FCC”) established a regulatory
mechanism to compensate local exchange carriers for providing long-distance
carriers access to their local networks. 
Verizon Tel. Cos. v. FCC, 269 F.3d 1098, 1101 (D.C. Cir. 2001).  Pursuant to these regulations, local exchange
carriers may collect End User Common Line (“EUCL”) charges from end users.  Id. 
FCC Tariff No. 16 specifically allows Verizon California to collect EUCL
charges from its customers.  Douglas
furnished the trial court with a copy of FCC Tariff No. 16, which was prepared
by the “Director-Tariffs” for Verizon Telephone Companies from an address in
Irving, Texas.  Douglas asserts that
because the tariff that allows Verizon California to collect EUCL charges from
its customers was drafted and issued from a Texas address, this is sufficient
to establish general jurisdiction.

We disagree.  The fact that the Director of Tariffs for
Verizon Telephone Companies prepares and issues the tariff statements for each
individual Verizon entity from an address in Texas does not demonstrate that
Verizon California conducts substantial activities in Texas.  If anything, the document indicates that
Verizon California is the “issuing carrier” for California and Arizona, while
Verizon Southwest, Inc. is the “issuing carrier” for Texas.  Accordingly, we hold that general
jurisdiction over Verizon California is not warranted based on the tariff
statement Douglas provided.

* * *

We hold that Verizon California does
not have sufficient minimum contacts with Texas to warrant the exercise of
general jurisdiction.  Based on the
evidence before the trial court, Verizon California does not conduct
substantial activities in Texas on a continuous and systematic basis.  Rather, the contacts alleged by Douglas are
precisely the type of “random, isolated, or fortuitous” contacts insufficient
to support general jurisdiction.  Keeton,
465 U.S. at 774, 104 S. Ct. at 1478. 
Accordingly, the trial court erred in denying Verizon California’s
special appearance.

          2.       Traditional
Notions of Fair Play and Substantial Justice

 

          Nor
does general jurisdiction over Verizon California comport with traditional
notions of “fair play and substantial justice.” 
Guardian Royal, 815 S.W.2d at 232.  In making this determination, we consider the
following factors: (1) the burden on the defendant; (2) the interests of the
forum state in adjudicating the dispute; (3) the plaintiffs’ interest in
obtaining convenient and effective relief; (4) the interstate judicial system’s
interest in obtaining the most efficient resolution of controversies; and (5)
the shared interest of the several states in furthering fundamental substantive
social policies.  Id.  These factors weigh against the exercise of
personal jurisdiction over Verizon California.

          Texas
has no interest in adjudicating this dispute. 
Harton’s alleged asbestos exposure and related injury and death occurred
in California—not Texas.  The parties are
California residents; thus, Texas has no interest either in protecting its
citizens or in policing the activities of a corporation authorized to do business
in the state.  Verizon California would
be burdened by being haled into Texas to defend suit, while Douglas would
obtain more convenient and effective relief in California, which is where the
witnesses, documents, and property at issue are located.  See James v. Ill. Cent. R.R., 965
S.W.2d 594, 599 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that
Texas had no interest in adjudicating cause of action that arose in Tennessee
because neither plaintiff nor corporate defendant was resident of Texas, Texas
would not be protecting its citizens from potential future wrongdoings of
corporate defendant, and all witnesses and evidence were located in
Tennessee).  In addition, California is an
available appropriate forum for governing the actions of a California
corporation in the interest of furthering substantive social policies.  We therefore conclude that the exercise of
personal jurisdiction over Verizon California does not comport with traditional
concepts of fair play and substantial justice.

IV.  CONCLUSION

 

          We
hold that Verizon California did not waive its special appearance by violating
the due order of pleadings rule.  We
further hold that no evidence supports the trial court’s conclusion that
Verizon California’s contacts with Texas are sufficient to confer personal
jurisdiction; nor does the exercise of personal jurisdiction comport with
traditional notions of fair play and substantial justice.  Accordingly, we reverse the order of the
trial court and render judgment dismissing the case against Verizon California
for lack of personal jurisdiction.

          

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.











[1] Douglas is Harton’s daughter.





[2] See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(7) (Vernon Supp. 2005).





[3] Specifically, the motion for new trial is styled
“Verizon California’s Motion to Vacate Default Judgment, or in the Alternative
Grant a New Trial, or in the Further Alternative, to Modify, Correct, or Reform
the Default Judgment, Subject to Its Special Appearance.”

 





[4] Specifically, counsel for Verizon California stated as
follows: “We are not ready to proceed on the motion to set aside the default
judgment until the Court has made a ruling on the special appearance that we
filed.”

 





[5] Specific jurisdiction is not applicable here because
Harton’s alleged asbestos exposure and related injury and death occurred in
California—not Texas.  See Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
227 (Tex. 1991) (explaining that specific jurisdiction is established if a
defendant’s alleged liability arises from or is related to an activity
conducted within the forum state).

 





[6] Douglas has also asked us to take judicial notice of
three pages of public records, under official seal from the California
Secretary of State, indicating that Verizon California’s corporate address is
in Texas and that several corporate officers work from two different physical
addresses in Texas.  At the special appearance
hearing, Douglas asked the trial court to take judicial notice of the same
information, but the court refused to do so because the documents were not
certified and instead expressly provided that they were “for information
purposes only.”  See Tex. R. Evid. 1005 (providing that
contents of official public record may be proved by certified copy); Tex. R. Evid. 201(d) (providing that
court is required to take judicial notice only when supplied with necessary
information).  As the trial court
properly refused to take judicial notice of these documents, we decline to do
so now on appeal.  See In re K.L.R.,
162 S.W.3d 291, 306 (Tex. App.—Tyler 2005, no pet.) (refusing to take judicial
notice of court records not properly admitted into evidence before trial court);
Van Tran v. Fiorenza, 934 S.W.2d 740, 742 (Tex. App.—Houston [1st Dist.]
1996, no writ) (“[A]ppellate courts are reluctant to take judicial notice of
evidence when the trial court was not afforded the opportunity to examine and
take into consideration that evidence.”). 
We therefore deny Douglas’s motion to take judicial notice.

 





[7] We note that Christian’s first affidavit was filed on
May 19, 2005, nearly a month and a half before the special appearance hearing,
providing Douglas’s counsel with ample opportunity to either depose Christian
or subpoena her to testify at the hearing regarding her residency and office
location, as well as the extent of her activities, if any, conducted in Texas
on behalf of Verizon California.

 





[8] In her affidavit, Christian states that she is both a
“Specialist-Legal Support” for Verizon Corporate Services Group Inc., as well
as the Assistant Secretary for Verizon California.  The fact that Christian could be reached on
the morning of the hearing at a Dallas-area phone number is no evidence that
Christian offices at a Texas location on behalf of Verizon California.