Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB















Opinion issued February 22, 2007






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00010-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



XENOS YUEN, Appellant

 

V.

 

BARRY A. FISHER AND FLEISHMAN & FISHER, Appellees

 

 



On Appeal from the 333rd District Court








Harris County, Texas

Trial Court Cause No. 2005-34272

 

 



O P I N I O N

 

          Xenos
Yuen appeals the trial court’s order granting a special appearance filed by
appellees, Barry Fisher and his law firm, Fleishman & Fisher (collectively
“Fisher”).  We conclude that (1) the
trial court properly set aside a default judgment entered against Fisher, after
learning that Fisher had specially appeared in the case but did not receive
notice of the default judgment hearing; (2) Fisher did not waive his special
appearance; (3) viewing the facts in a light favorable to the trial court’s
ruling, the record does not satisfy the requirements of due process and the
Texas long-arm statute so as to confer personal jurisdiction on the trial
court; and (4) the trial court did not abuse its discretion in denying Yuen’s
motion for new trial.  We therefore
affirm the order of the trial court.

I.  BACKGROUND

Chinese Arbitration Case

          In
2002, Yuen, a Texas attorney, brought a
proceeding in California federal court to
confirm and enforce an arbitration award obtained by a Chinese company against
a California
business (“the Chinese arbitration case”). 
Yuen decided to retain local counsel in the Central District of
California.  One of Yuen’s Texas-based employees,
Charles Hunter, knew Fisher, an attorney licensed in California. 
Hunter asked Fisher if he would be interested in serving as local
counsel.  Fisher accepted and, by 2004,
assumed full responsibility for the case. 
All of Fisher’s work for the case occurred in California, although he occasionally
communicated with Hunter and Yuen regarding the status of the case.

          Fisher
eventually moved to withdraw as local counsel because Yuen refused to pay for
his services.  In opposition to Fisher’s
motion to withdraw, Yuen filed a declaration with the California court, dated June 24, 2004, in
which he stated as follows:

          My
relationship with Mr. Fisher was never about money, but about friendship and
mutual interests in developing business in the Orient.  We worked together on several international
matters without ever asking for or receiving compensation.  The one time we tried to form a business
relationship, we failed.  However, this
failure should not be allowed to harm plaintiff.

 

The California
court granted Fisher’s motion to withdraw, and Fisher later sued Yuen in Los Angeles superior
court for his unpaid fees.  The parties
subsequently agreed to arbitrate the fee dispute.  During the arbitration, Yuen claimed that he
was entitled to an offset for fees Fisher owed him pursuant to a second
business relationship.  Specifically,
Yuen asserted that Fisher had asked him to recruit clients for a potential
lawsuit against the largest monosodium glutamate (“MSG”)[1] manufacturer
in Japan, and that he had incurred $35,000 of time and expenses in doing so.  The arbitrator granted Fisher his fees and
denied Yuen any offset.

The MSG Case

          Soon
thereafter, Yuen filed the present case against Fisher in Texas state court, alleging a gamut of
claims: breach of contract, quantum meruit, unjust enrichment, tortious
interference with existing and prospective business relationships, promissory
estoppel, fraud, violations of the Deceptive Trade Practices Act, fraudulent
inducement, and negligent misrepresentation. 
Factually, Yuen avers in his affidavit in opposition to Fisher’s special
appearance that Fisher called him and asked him to perform an investigation in China, Hong Kong, and Taiwan concerning the degree to
which Japanese manufacturers had monopolized the market for imported MSG.  He asserts that it was his understanding that
Fisher would compensate him and his associates for their time spent conducting
the investigation, which spanned a period of two months, but Fisher never did
so.

          Fisher
responded to the lawsuit by filing a special appearance, supported with his
affidavit and one from Hunter.  In them,
both men aver that, in the spring of 2003, during a telephone call between
Hunter and Fisher concerning the Chinese arbitration case, Fisher mentioned to
Hunter that a Washington, D.C. law firm was interested in locating a business
in Asia that could serve as a plaintiff in a proposed lawsuit complaining of
price fixing in the international MSG market. 
Fisher inquired in passing whether Yuen had any clients that might have
been affected by the alleged anti-competitive activity.  Hunter subsequently conveyed Fisher’s inquiry
to Yuen, who told Hunter that he did not have time to check into it.  That summer, Yuen traveled to China, and upon returning, he told Hunter that a
friend had informed him that the MSG markets in Asia
did not suffer from monopolistic pricing and that Fisher should look elsewhere
for his plaintiff.  Hunter conveyed this
information to Fisher.  Both men aver in
their affidavits that Fisher never spoke directly with Yuen regarding the MSG
matter, and that Fisher never mentioned any sort of payment.

Yuen responded to the special
appearance with a business records affidavit attaching telephone messages from
his secretary that reflect phone calls from Fisher to either Yuen or Hunter beginning
in September 2003, as well as e-mail communications among all three men
beginning in September 2003.  Yuen avers
in his affidavit that all of these communications concerned the MSG matter.

A month and a half after Fisher filed
his special appearance, Yuen moved for a default judgment on the ground that
Fisher had not answered the lawsuit. 
Yuen did not serve the motion on Fisher or notify him of the default
judgment hearing.  The trial court
subsequently entered a default judgment against Fisher.

          Subject
to his special appearance, Fisher moved to set aside the default judgment.  In the same motion, he asked the court to
rule on the special appearance, and, in the event the court denied the special
appearance, he requested sanctions against Yuen.  The trial court, on its own motion, set aside
the default judgment and continued the special appearance hearing so that Yuen
could depose Fisher.  The court
subsequently granted Fisher’s special appearance and dismissed the case with
prejudice for refiling in Texas.

          Yuen
moved for a new trial, attaching to his motion additional cellular telephone
records and e-mail communications that allegedly demonstrate Fisher’s contacts
with Texas.  The trial court denied the motion and this
appeal followed.

II. 
ANALYSIS

A.      Default
Judgment

          Yuen
contends the trial court erred in setting aside the default judgment against
Fisher, on its own motion, after learning that Fisher had filed a special
appearance in the case.  Yuen maintains
that a special appearance is not an answer, and cites LBL Oil Co. v.
International Power Services, Inc. for the proposition that “[t]he Texas
Supreme Court only requires that notice be served of a hearing on a post-appearance
motion for default judgment.”  777 S.W.2d
390 (Tex.
1989).

          In
LBL, characterized by the Texas Supreme Court as a “post-appearance
default judgment case,” the plaintiff had sued “LBL Oil Company, a Texas corporation,” on a
sworn account.  Id. at 390.  R.H. Lindley, an Oklahoma citizen, filed a
pro se motion to dismiss, alleging that he was the sole owner of the
unincorporated business “LBL Oil Company,” an “Oklahoma ‘dba,’” and that the
Texas court did not have jurisdiction over him. 
Id.  Lindley did not file an answer.  Id.  The plaintiff subsequently moved for a
default judgment, but did not serve the motion on Lindley.  Id.  Nor did he serve Lindley with notice of the
default judgment hearing.  Id.

          The
Texas Supreme Court reversed the default judgment, stating as follows:

Once a defendant has made an appearance in a cause, he
is entitled to notice of the trial setting as a matter of due process under the
Fourteenth Amendment to the federal constitution, as set forth in Peralta v.
Heights Medical Center, Inc., 485 U.S. 80, 108 S. Ct. 896, 99 L. Ed. 2d 75
(1988).  See Lopez v. Lopez, 757
S.W.2d 721, 723 (Tex.
1988).  The record here establishes that
Lindley had no actual or constructive notice of the hearing on the motion for
default judgment, which effectively was his trial setting since it was
dispositive of the case.

 

Id. at 390–91.       

Here, Fisher’s special appearance
constituted an “appearance,” similar to that made by Lindley in LBL,
sufficient to entitle him to notice of the default judgment hearing.  Id.;
see also In re Brilliant, 86 S.W.3d 680, 693 (Tex. App.—El Paso 2002, no
pet.) (concluding that appellant’s “plea to the jurisdiction constituted an
appearance” sufficient to entitle her to notice of default judgment hearing); Santex
Roofing & Sheet Metal, Inc. v. Venture Steel, Inc., 737 S.W.2d 55, 56
(Tex. App.—San Antonio 1987, no writ) (“Texas courts have always been reluctant
to uphold a default judgment without notice where some response from the
defendant is found in the record.”).  As
in LBL, there is no certificate of service on Yuen’s motion for default
judgment, and Fisher’s affidavit confirms that Yuen did not serve him with the
default judgment motion.  Likewise, there
is no notice of the default judgment hearing in the record.  Fisher avers in his affidavit that he first
learned of the default judgment when he received a postcard notice from the
trial court informing him that it had signed a default judgment.

          Because
the record establishes that Fisher had no actual or constructive notice of the
default judgment hearing, we conclude that the trial court did not abuse its
discretion in setting aside the default judgment.  LBL, 777 S.W.2d at 391; Brilliant,
86 S.W.3d at 693.

B.      Special
Appearance

          Yuen contends the trial court erred
in granting Fisher’s special appearance because (1) Fisher waived the special
appearance by asking the court to impose sanctions on Yuen’s counsel, and (2)
Fisher had sufficient contacts with Texas
to warrant the exercise of both general and specific jurisdiction.

          1.       Waiver

          Yuen
contends Fisher waived his special appearance by asking, in his motion to set
aside the default judgment, that the trial court impose sanctions against
Yuen’s counsel.

A party waives his special appearance
if he seeks “affirmative relief or invoke[s] the trial court’s jurisdiction on
any question other than the court’s jurisdiction prior to the trial court
ruling on the special appearance.”  Lang
v. Capital Res. Invs., I & II, LLC, 102 S.W.3d 861, 864 (Tex. App.—Dallas 2003,
no pet.) (citing Dawson-Austin v. Austin, 968 S.W.2d 319, 322 (Tex. 1998)).  Here, although Fisher’s motion to set aside
the default judgment seeks affirmative relief from the trial court in the form
of sanctions, Fisher did not seek such relief prior to the trial court
ruling on the special appearance.  To the
contrary, Fisher expressly moved for sanctions “subject to” resolution of the
special appearance.

Moreover, Fisher’s motion for
sanctions was made in the alternative—that is, he requested that the court
impose sanctions only in the event that it denied his special appearance.[2]  Because the court granted the special
appearance, it never heard or ruled on Fisher’s alternative motion for
sanctions.  Accordingly, Fisher did not
invoke the court’s jurisdiction by making a general appearance, and he therefore
did not waive his special appearance.  See
Silbaugh v. Ramirez, 126 S.W.3d 88, 93–94 (Tex.
App.—Houston
[1st Dist.] 2002, no pet.) (holding that appellant did not waive her special
appearance by filing motion to quash and motion to strike because motions were
“never heard or ruled on by the trial court”); see also Lang, 102 S.W.3d
at 864–65 (in default judgment case, holding that appellant’s offer in motion
for new trial to participate in all necessary hearings and proceed to trial on
merits did not constitute general appearance because motion for new trial was
made subject to special appearance, and further holding that where appellant
set motion for new trial and special appearance for hearing on same day,
appellant did not make general appearance because he objected to trial court’s
decision to proceed on motion for new trial before ruling on special
appearance); Minucci v. Sogevalor, S.A., 14 S.W.3d 790, 800 (Tex.
App.—Houston [1st Dist.] 2000, no pet.) (“[Appellant] did not waive his special
appearance by simply filing a notice of oral hearing on the motion to dissolve
writ of garnishment.”); Puri v. Mansukhani, 973 S.W.2d 701, 706–07 (Tex.
App.—Houston [14th Dist.] 1998, no pet.) (in default judgment case, holding
that appellant did not make general appearance, even though his motion for new
trial expressly stated he was “ready to go to trial,” because motion for new
trial was expressly made subject to special appearance).

2.       Minimum
Contacts

          Yuen
contends the trial court erred in granting Fisher’s special appearance because
Fisher had sufficient contacts with Texas
to warrant the exercise of both general and specific jurisdiction.

                   a.       Standard of Review

          A
Texas court may assert personal jurisdiction
over a nonresident defendant only if the requirements of both the Fourteenth
Amendment’s Due Process Clause and the Texas
long-arm statute are satisfied.  See
U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem. Code Ann. §
17.042 (Vernon 1997); CSR Ltd. v. Link,
925 S.W.2d 591, 594 (Tex.
1996).  The Texas
long-arm statute allows a court to exercise personal jurisdiction over a
nonresident defendant who does business in Texas. 
Tex. Civ. Prac. & Rem. Code
Ann. § 17.042.  The Texas Supreme
Court has repeatedly interpreted this broad statutory language “to reach as far
as the federal constitutional requirements of due process will allow.”  CSR Ltd., 925 S.W.2d at 594
(citations omitted).  Therefore, the
requirements of the Texas
long-arm statute are satisfied if the exercise of personal jurisdiction
comports with federal due process limitations. 
Id.

          The
United States Constitution permits a state to assert personal jurisdiction over
a nonresident defendant only if the defendant has some minimum, purposeful
contacts with the state and if the exercise of jurisdiction will not offend
traditional notions of fair play and substantial justice.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76, 105 S.
 Ct. 2174, 2183–84 (1985); Dawson-Austin, 968 S.W.2d at
326.  A nonresident who has purposefully
availed himself of the privileges and benefits of conducting business in the
state has sufficient contacts with the state to confer personal
jurisdiction.  CSR Ltd., 925
S.W.2d at 594.  

          The
“purposeful availment” requirement has recently been characterized by the Texas
Supreme Court as the “touchstone of jurisdictional due process.”  Michiana Easy Livin’ Country, Inc. v. Holten,
168 S.W.3d 777, 784 (Tex.
2005).  In Michiana, the Texas
Supreme Court articulated three important aspects of the purposeful availment
inquiry.  Id. at 785.  First, only the defendant’s contacts with the
forum count.  Id. 
This ensures that a defendant is not haled into a jurisdiction solely by
the unilateral activities of a third party. 
Id. (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2183). 
Second, the acts relied upon must be purposeful; a defendant may not be
haled into a jurisdiction based solely upon contacts that are “random,
isolated, or fortuitous.”  Id. (citing Keeton v. Hustler Magazine, Inc.,
465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)).  Third, a defendant
“must seek some benefit, advantage, or profit by ‘availing’ itself of the
jurisdiction” because “[j]urisdiction is premised on
notions of implied consent—that by invoking the benefits and protections of a
forum’s laws, a nonresident consents to suit there.”  Id. (citing World-Wide Volkswagen Corp. v.
Woodson, 444 U.S. 286, 297, 100
S. Ct. 559, 567 (1980)).

          A
defendant’s contacts with a forum can give rise to either general or specific
jurisdiction.  Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).  Specific
jurisdiction exists when the claims in question arise from or relate to the
defendant’s purposeful contacts with Texas.  Am. Type Culture Collection Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex.
2002).  In conducting a specific
jurisdiction analysis, we focus on the relationship among the defendant, Texas, and the litigation.  See Guardian Royal, 815 S.W.2d at 228.  General jurisdiction, on the other hand, arises
when a defendant’s “general business contacts” with the forum state are
“continuous and systematic,” allowing the forum to exercise personal
jurisdiction over the defendant even though the cause of action does not arise
from or relate to activities conducted within the forum.  Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984); CSR Ltd., 925
S.W.2d at 595.  When general jurisdiction
is asserted, the minimum contacts analysis is more demanding and requires a
showing that the defendant conducted “substantial activities” in the forum
state.  CSR Ltd., 925 S.W.2d at
595.

          The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident defendant within the provisions of the Texas
long-arm statute.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). 
The burden of proof then shifts to the nonresident to negate all
possible grounds for personal jurisdiction. 
Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985).

          Whether
a trial court properly granted a special appearance is a question of law that
we review de novo.  BMC Software,
83 S.W.3d at 794.  In making a
jurisdictional determination, the trial court must frequently resolve
underlying factual disputes.  Id.; Preussag Aktiengesellschaft v.
Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston
[1st Dist.] 2000, pet. dism’d w.o.j.). 
The trier of fact is the sole judge of the credibility of the witnesses
and the weight to be given to their testimony. 
Huynh v. Nguyen, 180 S.W.3d 608, 615 (Tex.
App.—Houston [14th Dist.] 2005, no
pet.).  We may not disturb a trial
court’s resolution of evidentiary conflicts that turn on credibility
determinations or the weight of the evidence. 
Benoit v. Wilson, 150 Tex.
273, 281–82, 239 S.W.2d 792, 796–97 (1951); Young Chevrolet, Inc. v. Tex.
Motor Vehicle Bd., 974 S.W.2d 906, 914 (Tex. App.—Austin 1998, pet.
denied).  Where, as here, a trial court
does not issue findings of fact or conclusions of law with its special
appearance ruling, all fact findings necessary to support the judgment and
supported by the evidence are implied. 
BMC Software, 83 S.W.3d at 795.

 

                   b.       General Jurisdiction

          Yuen
asserts that he “probably ha[s] established general jurisdiction” because
Fisher has a national legal practice and regularly litigates cases around the country.  Yuen, however, did not provide the trial
court with any evidence to demonstrate the extent of Fisher’s legal practice in
Texas.

          To
the contrary, the uncontroverted evidence before the trial court shows that
Fisher does not maintain a regular place of business in Texas
and has no employees, agents, or servants within the state.  He has never maintained an office, mailing
address, or telephone number in Texas.  Nor does he maintain a registered agent for
service in Texas.  Fisher has never paid any taxes in Texas.  Nor
does he own or lease any real property in Texas.  He does not advertise or regularly solicit
business in Texas.  Though Fisher was listed as co-counsel in
some federal cases in Texas in the
1970s and early 1980s, he has not practiced law in Texas
since.

Texas courts often consider “the lack of
an office, agent, or the solicitation of business as determinative to the
exercise” of general jurisdiction.  James
v. Ill. Cent. R.R., 965 S.W.2d
594, 598 n.1 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing Nat’l
Indus. Sand Ass’n v. Gibson, 897 S.W.2d 769, 772–74 (Tex. 1995) (no general
jurisdiction where defendant never maintained office or other place of business
in Texas and had no agents in Texas); Int’l Turbine Serv., Inc. v. Lovitt,
881 S.W.2d 805, 810 (Tex. App.—Fort Worth 1994, writ denied) (no general
jurisdiction where defendant did not have office, employee, or market business
within Texas); Clark v. Noyes, 871 S.W.2d 508, 518–20 (Tex. App.—Dallas
1994, no writ) (no general jurisdiction over individual who had no business
interests in Texas); Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d
630, 634–35 (Tex. App.—Dallas 1993, writ denied) (no general jurisdiction over
defendant that did not maintain place of business in Texas, had no employees
from Texas, and did not solicit business in Texas); Scott v. Huey L.
Cheramie, Inc., 833 S.W.2d 240, 242 (Tex. App.—Houston [14th Dist.] 1992,
no writ) (no general jurisdiction over corporation that had no office or agent
in Texas)).  Moreover, a nonresident attorney’s
occasional representation of Texas
residents is ordinarily insufficient to justify the exercise of general
jurisdiction.  See, e.g., Klenk
v. Bustamante, 993 S.W.2d 677, 682 (Tex. App.—San Antonio 1998, no pet.)
(holding that nonresident attorneys’ representation of Texans, long-distance
communications with Texas clients,
and trips to Texas were insufficient
to support general jurisdiction), disapproved on other grounds by BMC
Software, 83 S.W.3d at 794.

          Here,
the uncontroverted evidence before the trial court shows that Fisher has no
office, employees, or registered agent in Texas;
does not regularly solicit business or advertise in Texas;
does not regularly practice law in Texas;
and has not litigated in Texas for
decades.  Accordingly, he does not have
“continuous and systematic general business contacts” with Texas, and the trial court did not err in granting
Fisher’s special appearance on the ground that it did not have general
jurisdiction over him.

                   c.       Specific Jurisdiction

          Yuen
contends the court has specific jurisdiction over Fisher because Fisher called
Yuen in Texas to solicit his
participation in the MSG enterprise. 
Yuen cites Memorial Hospital System v. Fisher Insurance Agency, Inc.,
835 S.W.2d 645 (Tex. App.—Houston [14th Dist.] 1992, no writ), for the
proposition that “[o]ne telephone call is sufficient to satisfy the Texas test
when the telephone call constitutes the tortuous [sic] act of negligent
misrepresentation.”

          The
Texas Supreme Court expressly disapproved of Memorial Hospital
in Michiana.  Michiana, 168
S.W.3d at 791–92 & n.81.  The Michiana
court was concerned with the “problems [that] arise if [specific] jurisdiction
turns not on a defendant’s contacts, but on where it ‘directed a tort.’”  Id.
at 790.  The court noted that

changes in technology have made reliance on phone
calls obsolete as proof of purposeful availment.  While the ubiquity of “caller ID” may allow
nonresidents to know a caller’s telephone number, that number no longer
necessarily indicates anything about the caller’s location.  If jurisdiction can be based on phone
conversations “directed at” a forum, how does a defendant avail itself of any
jurisdiction when it can never know where the other party has forwarded calls
or traveled with a mobile phone?

 

Id. at 791.  The court thus rejected the notion that “a
single conversation with a private citizen constitutes purposeful availment of
any jurisdiction in which that citizen happens to live.”  Id.
at 789.

          Rather,
the Michiana court emphasized that “it is the defendant’s conduct and
connection with the forum that are critical.” 
Id. at 789 (internal
quotation marks omitted).  “It is
essential in each case that there be some act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws.”  Id.
at 784 (internal quotation marks and emphasis omitted).  We therefore must look to the “actions and
reasonable expectations of the defendant” in conducting a minimum contacts
analysis.  Id.
at 790.

          Here,
the evidence before the trial court concerning Fisher’s “actions and reasonable
expectations” was conflicting.  Yuen
averred in his affidavit that Fisher called him, knowing he was in Texas, to ask him to perform an investigation in China, Hong Kong, and Taiwan
concerning the degree to which Japanese manufacturers had monopolized the
market for imported MSG.  It was Yuen’s
understanding that Fisher would compensate him for the two months he spent
conducting the investigation.  We note
that it is undisputed that the investigation would not take place in Texas, and neither party proffered evidence as to
where any MSG lawsuit would be filed.

Yuen attached to his affidavit
several business records, in the form of telephone messages and e-mail
communications among himself, Fisher, and Hunter, that allegedly concern the
MSG matter.  We have reviewed the e-mail
communications and note that, contrary to Yuen’s assertions, none of them
pertain to the MSG matter.  Rather, all
of the e-mails involve either personal matters or the Chinese arbitration case.
 The telephone messages indicate that
Fisher placed twelve telephone calls to either Yuen or Hunter beginning in
September 2003 and ending in May 2004, but the messages do not indicate the
reason for Fisher’s calls.

          Fisher
presented controverting evidence in the form of affidavits from himself and
Hunter, as well as a prior inconsistent declaration made by Yuen.  Specifically, Fisher and Hunter averred in
their affidavits that, during a telephone conversation in the spring of 2003 concerning
the Chinese arbitration case, Fisher informed Hunter that a Washington, D.C.
law firm was looking for a company to serve as a plaintiff in a contemplated
price fixing lawsuit concerning the international MSG market, and Fisher
inquired in passing whether Yuen might have any suitable clients.  Hunter relayed Fisher’s inquiry to Yuen, who
informed him that he did not have time to check into it.  That summer, after returning from a trip to China, Yuen told Hunter that a friend had informed
him that there was no monopolistic pricing in the international MSG market, and
Fisher should look elsewhere for his plaintiff.

          The
trial court also had before it a June 2004 declaration made by Yuen in
opposition to Fisher’s motion to withdraw as local counsel in the Chinese
arbitration case.  In his declaration,
Yuen swore that his “relationship with Mr. Fisher was never about money, but
about friendship and mutual interests in developing business in the Orient.  We worked together on several international matters
without ever asking for or receiving compensation.  The one
time we tried to form a business relationship [referring to the parties’
agreement that Fisher serve as local counsel in the Chinese arbitration case],
we failed.”  (Emphasis added.)  The declaration did not mention any MSG
business relationship.

          A
trial court “frequently must resolve questions of fact before deciding the
[personal] jurisdiction question.”  BMC Software, 83 S.W.3d at 794.  In doing so, it is the sole province of the
trial court to determine the credibility of the witnesses and to resolve
conflicts in the evidence.  Benoit,
150 Tex. at 281–82, 239 S.W.2d at
796–97; Huynh, 180 S.W.3d at 615; Puri, 973 S.W.2d at 711.  Here, the trial court implicitly resolved the
conflicts in the evidence against Yuen and in favor of Fisher by granting the
special appearance.

In Puri, our sister court
confronted a similar situation involving opposing affidavits and conflicting evidence
in the special appearance context.  973
S.W.2d at 710–11.  The court refused to
substitute its judgment for that of the trial court, stating as follows:

The evidence in this case primarily consists of
opposing affidavits and appellee’s testimony. 
Appellant relied only on his own affidavits at the special appearance
hearing and produced no documentary or other evidence.  Thus, the trial court, as the sole judge of
credibility, could resolve the swearing match. 
We cannot comply with appellant’s request that we reevaluate appellee’s
credibility.  We are not fact finders and
we do not pass upon the credibility of witnesses or substitute our judgment for
that of the trier of fact, even if there is conflicting evidence upon which a
different conclusion could be supported.

 

Id. at 711; see also Navasota Res., Ltd. v. Heep
Petroleum, Inc., No. 03-05-00246-CV, 2006 WL 1788221, at *3 (Tex.
App.—Austin June 30, 2006, no pet. h.) (refusing to disturb trial court’s
resolution of evidentiary conflicts and issues of credibility in special
appearance context).

          We
likewise decline to substitute our judgment for that of the trial court.  Not only did the court have before it
Fisher’s and Hunter’s controverting affidavits, it also had a prior
inconsistent declaration from Yuen himself. 
Particularly in light of Yuen’s sworn declaration that he never entered
into a business relationship with Fisher other than in the Chinese arbitration
case, we conclude that sufficient evidence supports the trial court’s finding
that Fisher did not purposefully avail himself of the privileges and benefits
of conducting business in Texas by merely requesting in one telephone call that
Hunter ask Yuen whether he was aware of any suitable MSG plaintiffs in China.  We therefore affirm the trial court’s holding
that Fisher did not have sufficient minimum contacts with Texas to subject him to the exercise of specific
jurisdiction.

C.      Motion
for New Trial

          Yuen contends the trial court erred
in denying his motion for new trial because he provided the court with newly
discovered evidence demonstrating fifty-seven telephone contacts between his
law firm and Fisher.

          A
party who seeks a new trial on the ground of newly discovered evidence must
satisfy the court that (1) the evidence has come to his knowledge since the
trial, (2) it was not owing to want of due diligence that the evidence did not
come to his attention sooner, (3) the evidence is not cumulative, and (4) the
evidence is so material that it would probably produce a different result if a
new trial were granted.  Jackson v.
Van Winkle, 660 S.W.2d 807, 809 (Tex.
1983); Summers v. Welltech, Inc., 935 S.W.2d 228, 233 (Tex. App.—Houston
[1st Dist.] 1996, no writ).  We review
the trial court’s denial of a motion for new trial for an abuse of
discretion.  Jackson,
660 S.W.2d at 809.

          Here,
Yuen attached to his motion for new trial additional cellular telephone bills
and e-mail communications between Fisher and Hunter.  He did not allege, however, that the evidence
had come to his attention since the special appearance hearing.  Nor did he explain how it was not through
want of his diligence that it had not come to his attention sooner.  For these reasons alone, the trial court did
not abuse its discretion in denying the motion.

          In
addition, “[w]hen a party seeks a new trial based on newly discovered evidence,
the motion for new trial must verify that the evidence is true and
correct.”  Raymond v. Raymond, 190
S.W.3d 77, 82 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Yuen’s motion for new trial is not
verified.  Accordingly, the trial court
did not abuse its discretion in denying the motion based on the additional fact
that it was not verified.  Id.

III. 
CONCLUSION

          We
hold that (1) the trial court properly set aside the default judgment against
Fisher, after learning that Fisher had specially appeared in the case but did
not receive notice of the default judgment hearing; (2) Fisher did not waive
his special appearance by filing an alternative motion for sanctions made
subject to the denial of his special appearance; (3) viewing the facts in a
light favorable to the trial court’s ruling, the record does not satisfy the
requirements of due process and the Texas long-arm statute so as to confer
personal jurisdiction on the trial court; and (4) the trial court did not abuse
its discretion in denying Yuen’s motion for new trial.  We therefore affirm the order of the trial
court.

 

 

          

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.











[1]
MSG is a flavor enhancer used in processed
foods.

 

 





[2] The Texas Rules of Civil Procedure expressly permit a
party to argue in the alternative.  Tex. R. Civ. P. 48; Regency
Advantage Ltd. P’ship v. Bingo Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996) (“[O]ur
rules expressly permit parties to proceed on alternative theories of relief.”).